(115 App. Div. 218)

PEOPLE ex rel. QUINN v. VOORHIS et al.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. ELECTIONS—NOTICE—PUBLICATION.

Election Law, Laws 1896, p. 893, c. 909, § 10, provides that in the borough of Manhattan publication of a list of places for the registration and polling of votes shall be made in four daily newspapers advocating the principles of the political party polling the highest number of votes at the last preceding election for Governor, and in the same number of papers advocating the principles of the political party polling the next highest number of votes. *Held* that, if a newspaper is supporting the principles of a party, it is eligible to designation, though it be not supporting the candidates.

2. MANDAMUS—JURISDICTION AND RELIEF—SCOPE OF RELIEF.

Though in mandamus against the commissioners of elections the prayer for an order required that a particular newspaper be designated, the court acquired jurisdiction to command the board to perform the duty devolving on it by law.

[Ed. Note.—For cases in point, see vol. 33, Cent. Dig. Mandamus, §§ 392, 393.]

Appeal from Special Term, New York County.

Mandamus by the people, on the relation of Thomas C. Quinn, against John R. Voorhis and others, as commissioners of the board of elections of the city of New York. From an order granting a peremptory writ, defendants appeal. Reversed, and a writ directed to issue requiring defendants to publish certain notices.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Arthur C. Butts, for appellants.

Otto T. Hess, for respondent.

Leopold Wallach also submitted a brief on behalf of the New York Times.

LAUGHLIN, J. On the 15th day of October, 1906, this court by a majority vote, granted a motion duly made to dismiss the appeal herein (100 N. Y. Supp. 717), and subsequently certified two questions to the Court of Appeals. By the remittitur of the Court of Appeals now presented to this court, it appears that the Court of Appeals reversed our order dismissing the appeal, but did not answer either question upon which this court requested the opinion of the Court of Appeals. The questions which we certified for the opinion of the Court of Appeals were as follows:

"(1) Was it error to dismiss an appeal to the Appellate Division from a final order granting a peremptory mandamus, where the defendants have obeyed the writ by completely performing the acts which they were commanded to perform?

"(2) If it was error to dismiss such appeal, was the mandamus properly granted upon the papers presented to the Special Term?"

It appears by the opinion of the Court of Appeals that, instead of accepting the recital in the first question that the board had obeyed the peremptory writ of mandamus authorized by the order appealed from "by completely performing the acts which they were commanded to perform," which appeared by the affidavits upon which the motion to dismiss was made, and was not controverted, the record was examined, and the conclusion reached that the duty of the board was not and could not be completed by designating newspapers which concededly answered all the requirements of the statute, and authorizing the publication therein of the election notices required by law. It is manifest that such decision must have been upon the theory advanced in the dissenting opinion of Mr. Justice INGRAHAM on the motion to dismiss the appeal, which was, in effect, that the duty to cause the notices to be published is a continuing duty on the part of the board, concerning which they can only contract for the publication for one day at a time, if at all. This is the logical and necessary effect of the decision. It clearly appeared by uncontroverted evidence upon the record before us and upon the motion to dismiss the appeal that the newspapers originally designated were not eligible for designation, for the reason that they were not supporting the principles of the Democratic Party, and were supporting those of the Republican Party, which necessarily, upon such record, rendered the original designations illegal. It was asserted on the argument that in a brief submitted by counsel for one of the newspapers originally designated as amicus curiæ that it was not true that the papers originally designated were not supporting the principles of the Democratic Party, which was essential to enable the board to lawfully designate them for the publication of the election notices. There having been reason to believe that the failure of the board to deny any of the allegations of the moving papers, and that its failure to give notice to the proprietors

of the newspapers originally designated, to enable them to controvert the facts, had resulted in a record that did not present a question that might have been presented and might arise thereafter—namely, as to whether it was essential to eligibility for such designation that the newspaper was supporting the candidates as well as the principles of the Democratic Party—I refrained from expressing an opinion on that question until it should be presented to the court in some proceeding or action to which the persons interested would be parties.

Since the Court of Appeals has remitted the matter to this court for a decision on the merits, I am now obliged to express my views upon questions which I thought should be left open until the interested parties could be heard. It is to be borne in mind that neither the newspapers originally designated nor those subsequently designated in place thereof have had notice or are before the court; but, notwithstanding that fact, we must render a decision which will necessarily be stare decisis, although not res adjudicata as to their rights; in other words, one set or the other of them will be left in the position of having an adverse decision on questions directly affecting their rights, which, although not binding upon them, will be followed when their cases arise, unless they are able to convince the court that the decision was clearly wrong. As already observed, the only basis upon which the decision of the Court of Appeals can stand is that a newspaper, although eligible to designation, obtains no vested right by being designated and authorized by the board to publish the registration and election notices, and the board is at liberty to change the designation at any time. Unless this be so, what can now be accomplished by a reversal of the order authorizing the mandamus? On the record before us, which is the record upon which the Special Term was required to act, the former designations were clearly illegal, and newspapers concededly eligible for designation have since been designated and authorized to publish the remaining notices, and they have accepted the employment and entered upon the performance of the work upon the basis as to compensation contained in their proposals, which have been accepted. Now, unless no vested right can be acquired by such designation and authorization, how can the board rescind the last designation, which, so far as the record discloses (and we are confined to the record in making judicial decisions), were perfectly legal and valid? The order dismissing the appeal has been reversed upon the ground that the board is still at liberty to disregard these apparently lawful designations, and authorize the publications in other newspapers. With all due deference to the Court of Appeals, I am of opinion, not only that a lawful designation of an eligible newspaper under the statute, and authority from the board to it to publish all of the election notices required by law, as appears to have been done in this case, according to written proposals which have been duly invited and accepted, constitutes a contract in which the proprietor of the newspaper has vested rights, but the command of the statute also requires that the publication once lawfully begun shall be continued in that newspaper to the end. This has always been the practice, and we have a practical construction of the statute, which is entitled to great weight.

Moreover, that such was the intention of the Legislature clearly appears by a provision of the same section of the statute preceding that relating to the city and county of New York, and relating to publications of such notices elsewhere in the state. The provision to which I refer is as follows:

"The officers authorized to designate the registration and polling places in any city, except the city of New York, shall cause to be published in two newspapers within such city a list of such places so designated, and the boundaries of each election district in which such registration and polling place is located. Such publication shall be made in the newspaper so selected upon each day of registration and the day of election, and on the day prior to each such days. One of such newspapers so selected shall be one which advocates the principles of the political party polling the highest number of votes in the state at the last preceding election for governor, and the other newspaper so designated shall be one which advocates the principles of the political party polling the next highest number of votes for governor at said election. The board of elections of the city of New York shall cause to be published in two newspapers in each borough within such city a list of the registration and polling places so designated in each borough, and the boundaries of each election district therein in which such registration and polling place is located; except that in the borough of Brooklyn, such publication shall be made in the newspapers designated to publish corporation notices therein; and except also that in the borough of Manhattan such publication shall be made in four daily newspapers published in the borough of Manhattan which advocate the principles of the political party polling the higest number of votes in the state at the last preceding election for governor, and also in four daily newspapers published in the borough of Manhattan which advocate the principles of the political party polling the next highest number of votes for governor at said election, one of which newspapers may be a daily newspaper published in the German language; which publications shall include the list of such registration and polling places and their boundaries, in the county of New York. Such publication shall be made in such newspapers upon each day of registration and the day of election and on the day prior to each of such days. Such publications shall be made in newspapers published in such boroughs which shall respectively advocate the principles of the political party which at the last preceding election for governor respectively cast the largest and next largest number of votes in the state for such office."

This provision commands that the subsequent notices shall be published in the same newspapers. I did not deem it necessary to express my views on this point before, but since the Court of Appeals has disposed of the appeal with a brief memorandum which leaves us to speculate as to their views, I deem it proper to state mine now. I agree with Mr. Justice INGRAHAM that if a newspaper is supporting the principles of a party, it is eligible to designation, even though it be not supporting the candidates; but in selecting the newspapers great weight should be given to the fact that a newspaper is supporting both principles and candidates, because the electors supporting candidates should be able to find the election notices in newspapers supporting their candidates. I was of opinion, therefore, and but for the opinion of the Court of Appeals it would seem, that if the newspapers originally designated can show that they were and are supporting the principles of the Democratic Party, they were eligible (with the propriety of their selection the court has no right to interfere), and they obtained vested rights of which they have not been and

could not be deprived without their consent, or being parties to a litigation involving the question, and failing to show the facts upon which their rights depend, and that they are proceeding within their rights in continuing the publications, and will be entitled to recover therefor. It would, however, be destructive of rules and principles essential to due administration of justice for this court to reverse what appears to be, upon the facts as presented, a valid order, upon suggestions de hors the record that the board may be able to show (what it did not show when it should have done so) that the newspapers originally designated were eligible. It having been duly shown to the court on notice to the board that no legal designation had been made, I think the court acquired jurisdiction, notwithstanding the prayer for an order requiring that a particular newspaper be designated, to command the board to perform the duty devolving on it by law. People v. Brennan, 39 Barb. 651; People ex rel. Francis v. Common Council, 78 N. Y. 33–41, 34 Am. Rep. 500. If the board had denied the facts alleged showing that the designations made by them were illegal, and had shown that they ascertained and determined that the papers designated by them were supporting the principles of the Democratic Party, then the proceeding should have been dismissed, as their action could only have been reviewed by certiorari (People ex rel. Wooster v. Maher, 141 N. Y. 330, 36 N. E. 396; People ex rel. Harris v. Cannon, 149 N. Y. 26, 43 N. E. 418; People ex rel. McCabe v. Mathies, 179 N. Y. 246, 72 N. E. 103); but since it appeared and remained undenied that they had not performed their statutory duty, the presumption of performance of duty to which public officers are entitled was overcome, and the court was authorized to issue the writ to compel performance of the statutory duty (Matter of Stickney's Estate, 185 N. Y. 106, 77 N. E. 993). Of course, if the papers originally designated are in fact eligible, they may be again designated, pursuant to the writ to be issued. The order as made, however, is wrong. It limits the board to designating papers supporting the candidates, and does not require the designation of papers supporting the principles of the Democratic Party, which is the only direction that it should have contained.

The order, therefore, should be reversed, and the motion granted directing a mandamus issue requiring the defendants to publish the notices required by the election law in four daily newspapers published in the borough of Manhattan which advocate the principles of the Democratic Party, with $50 costs and disbursements to the defendants against the relator.

PATTERSON, J., concurs.

INGRAHAM, J. When this appeal was first before this court, I concurred with Mr. Justice CLARKE. Since that time the Court of Appeals has intimated that we should dispose of the appeal upon the merits, which, as I understand it, depends upon the question as to whether the order was properly granted upon the facts before the Special Term. The order appealed from granted a peremptory writ

of mandamus, requiring the defendants to publish the election notices in four daily newspapers in the borough of Manhattan that advocate the election of William Randolph Hearst for governor. The statute requires the defendants to make the publications in newspapers advocating the principles of the Democratic Party. The court below erred in not commanding the defendants to publish the notices in newspapers representing the principles of the Democratic Party. My view, therefore, is that the order appealed from should be reversed, and the motion granted, directing a mandamus to issue requiring the defendants to publish the notices required by the election law in four daily newspapers published in the borough of Manhattan which advocate the principles of the Democratic Party, with $50 costs and disbursements to the defendants against the relator.

CLARKE, J., concurs.

HOUGHTON, J. (concurring). I think the meaning of the statute is that the newspapers selected by the board of elections shall be designated to publish the election notices continuously for the period and at the times provided by the election law, and that the board has no right to designate one set of papers to publish one day and one set another, or to change the designation after it shall have once been legally made.

I also think that support of a candidate at the head or in the body of the ticket is not the true test as to whether a newspaper advocates the principles of a party. Lack of support, and even antagonism, may at times be the best means of preserving the party and perpetuating its principles. On the moving papers, however, which I think were sufficient to give the court below jurisdiction to make a general order, it is shown without any contradiction, because no opposing affidavits were presented, that the newspapers originally designated did not when designated advocate the principles of the Democratic Party. Very likely it could have been established that this was not proved, but there was no attempt to do so by any legal proof. This court is bound by the record before it, and upon such record it appears that the original designation was illegal, because the newspapers designated were advocating the principles of the Republican Party instead of the Democratic Party.

For these reasons, I concur in the conclusion reached by Mr. Justice LAUGHLIN.