(61 Misc. Rep. 511.)

### MORNING TELEGRAPH CO. v. CITY OF NEW YORK.

(Supreme Court, Trial Term, New York County. December, 1908.)

MANDAMUS (§ 187*) — CONTRACTS MADE PURSUANT TO WRIT OF MANDAMUS — LIABILITY THEREUNDER.

> Where the board of elections of New York under a peremptory writ of mandamus designated a certain newspaper to publish election notices, and while the designation was in force the newspaper published such notices, they are entitled to pay therefor, though the granting of the writ was afterwards reversed on appeal, and the designation of the newspaper revoked.

> [Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 437; Dec. Dig. § 187.*]

Action by the Morning Telegraph Company against the City of New York to recover for publishing election notices. Judgment for plaintiff.

Churchill & Marlow, for plaintiff.

Francis K. Pendleton, Corp. Counsel (Richard H. Mitchell, of counsel), for defendant.

DAYTON, J. On October 4, 1906, the board of elections passed a resolution designating eight papers (four as advocating the principles of the Republican party and four those of the Democratic party) in which the election notices required by law should be published, at their proposed rates, on October 7, 8, 9, 12, 13, 14, and 15 and November 5 and 6. On October 6, 1906, a peremptory writ of mandamus was issued by the Supreme Court directing the board of elections to reconvene and designate four daily papers which "advocate the election of William Randolph Hearst as the candidate for governor * * * and its platform as adopted at the state convention held on the 26th day of September * * * and the Democratic ticket as nominated at said convention." On the 8th day of October, 1906, the board of elections again met and passed a resolution rescinding the resolution of October 4, 1906, and designating the plaintiff as one of the daily papers in which the said election notices should be printed. The board of elections having thereupon appealed to the Appellate Division, such

proceedings were had that on November 5, 1906, the Appellate Division (People ex rel. Quinn v. Voorhis, 115 App. Div. 218, 100 N. Y. Supp. 927) entered an order reversing the order of the Special Term, which granted the writ of mandamus, and directing that a mandamus issue requiring the board to publish the notices in four newspapers "which advocate the principles of the Democratic Party."

On November 13, 1906, the board of elections adopted a further resolution revoking the designation of the papers made under the resolution of October 8th and redesignating those papers named in its original resolution of October 4, 1906. On February 19, 1907, the Court of Appeals (187 N. Y. 327, 80 N. E. 196) affirmed the order of the Appellate Division above mentioned. The plaintiff, anticipating its designation by the board of elections, published the notices on October 7th and 8th before it received the official notice which alone could authorize the publication. For these two days it claims the sum of $4,-242.74. I find that this claim is without foundation as not having been ordered, and I therefore dismiss the claim. The plaintiff claims the further sum of $14,849.59 for publication authorized by the resolution of October 8, 1906. The publication is conceded. The rates are not disputed. The plaintiff did the work and the city received the benefit. At the time of passing the resolution of October 8, 1906, there can be no doubt that the board of elections acted within the scope of its authority. It could have designated the four papers therein named as conforming to the tests recited in the writ of mandamus without the instruction of the court. The decision of the court at Special Term involved the construction of a statute—nothing more. The learned Special Term, acting upon its best advisement, after due deliberation, decided that in its opinion the tests above mentioned were proper and necessary, and so instructed the board of elections. That opinion fixed the law governing the acts of the board of elections at the time of the resolution of October 8, 1906, by which this plaintiff was designated as one of the daily papers in which the election notices were to be published. And the law remained as so declared until the reversal of the order by the Appellate Division the day prior to the general election of 1906. Had there been no appeal, the city certainly could not and would not attempt to question its liability upon this contract. But the entire work was performed before the order of the Appellate Division reversed the Special Term. As to subsequent publications, if there had been any, it may be admitted that the order of the Appellate Division would govern. But that order should not antedate itself to relieve the city of a contractual liability, properly assumed; it having received the benefit of the full measure of performance of the work agreed upon at the contract price. Hence the action of the board of elections November 13, 1906, by rescinding its resolution of October 8, 1906, and reaffirming its resolution of October 4, 1906, did not deprive the Morning Telegraph of the money it had earned by the performance of its duly made contract, notwithstanding the payment (after the decision of the Court of Appeals, supra) by the city to the newspapers referred to in the statement of facts. On all the facts and circumstances presented, what more valid agreement could the Morning Telegraph have had than

one made by the sanction of the court requiring statutory performance at specified rates and within a limited period?

As that agreement was fully performed when the order for the mandamus was reversed, I am of opinion that plaintiff is entitled to recover $14,849.59, with interest from November 6, 1906, and costs. Verdict directed accordingly.

Judgment for plaintiff, with costs.