(155 App. Div. 530.)

CITY OF NEW YORK v. NEW YORK EVENING POST CO.

(Supreme Court, Appellate Division, First Department. March 14, 1913.)

PLEADING (§ 368*)—RECOVERY OF MONEY PAID—SEPARATING AND NUMBERING CAUSES OF ACTION.

The complaint, alleging that defendant contracted with the board of elections to publish the list of registration and polling places on certain dates, as required by Election Law (Consol. Laws 1909, c. 17) § 301, at an agreed price, thus setting up one entire contract, that it breached it by not publishing it on two of those days, that it falsely represented it had performed the contract, and received payment, induced by said representation, on the basis of full performance, and praying for recovery of the full amount paid, sets forth but one cause of action; so that it is error to order plaintiff to separately state and number causes of action.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1194–1198; Dec. Dig. § 368.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by the City of New York against the New York Evening Post Company. From an order requiring plaintiff to separately state and number causes of action, plaintiff appeals. Reversed, and motion denied.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Archibald R. Watson, Corp. Counsel, of New York City (William E. C. Mayer, of Brooklyn, of counsel), for appellant.

Wherry & Morgan, of New York City (William M. Wherry, Jr., of New York City, of counsel), for respondent.

CLARKE, J. The complaint alleges: That the defendant corporation publishes a newspaper known as the Evening Post, setting out section 301 of the Election Law (Consol. Laws 1909, c. 17):

"The board of elections of the city of New York shall cause to be published * * * a list of the registration and polling places * * * in four daily newspapers published in the borough of Manhattan which advocate the principles of the political party polling the highest number of votes at the last preceding election for Governor, and also in four * * * which advocate the principles of the political party polling the next highest number. * * * Such publication shall be made in such newspapers upon each day of registration and the day of election and on the day prior to each of such days. * * * In selecting the newspapers in which said publications are to be made the said board shall keep in view the object of giving the widest publicity thereto."

That on or about the 4th day of October, 1910, the defendant entered into a contract with the board of elections wherein and whereby the defendant promised and agreed to publish a list of the registration and polling places duly designated in the county of New York, and the boundaries of each election district therein, in its said newspaper, the Evening Post, on the 9th, 10th, 11th, 14th, 15th, 16th, and 17th days of October, 1910, and on the 7th and 8th days of November, 1910, at an agreed price of $12.80 per thousand ems, to be paid to the defendant by the plaintiff. That the said 9th and 16th days of October fell upon Sundays; whereas the said defendant's newspaper is not now, nor was not then, a Sunday newspaper, having no Sunday issue or edition whatever. That at the time said contract was entered into by the defendant no publication of a bona fide or other Sunday issue or edition of its newspaper was intended or contemplated by the defendant. That the duly designated and selected dates of registration were the 10th, 11th, 15th, and 17th days of October, 1910. That the defendant did not perform its said contract, in that it wholly failed to publish said lists of polling places and boundaries of election districts on the 9th day of October. That it failed to perform its said contract, in that it failed to print or publish the said list in any newspaper printed, issued, and published on the 9th and 16th days of October, except that it made a pretended publication of the said advertisement in a sheet or sheets of paper especially printed by the defendant on said days. That said sheet or sheets of paper printed on said 9th and 16th days of October, 1910,

were not circulated or given the publicity required and contemplated by law.  That the said printing of the sheet or sheets of paper by the defendant on said 9th and 16th days of October was a mere trick and device to enable the defendant to obtain the payment of its alleged claim against the city; the said printing on the said days constituting a colorable and pretended, and not a real or valid or legal, performance of the defendant's said contract with the plaintiff.  That by reason of the matters aforesaid there was no valid publication of the said list of polling places and boundaries of election districts for the year 1910 by the defendant, and whatever publication thereof was made by the defendant was void and of no effect under the law, all of which was well known to the defendant.  That on or about the 10th day of November, 1910, the defendant filed with the city, through the board of elections, a certain bill of claim against the plaintiff for the sum of $16,920 with a request for the audit and payment thereof, wherein it was represented to the plaintiff and its officers charged with the audit and payment of the said claim that there had been regularly published in its said newspaper, the Evening Post, the said list for the said general election to be held on November 8, 1910.  That defendant well knew such representations to be false, and that the said list of polling places and boundaries of election districts had not been published in the manner in which and on the dates when it had agreed, as aforesaid, nor in the manner provided by statute, and that by reason of its failure and omission to publish such list whatever publication had been made was void and without legal effect.  That the plaintiff and its officers charged with the duty of audit and payment of said claim, not knowing that the representations were untrue, and relying upon the defendant's said representations and believing them to be true, did, on the 6th day of December, 1910, without warrant or authority of law, assume to audit and pay the said claim, and the defendant illegally and unlawfully received from the plaintiff the said sum of $16,920.  That the payment of the said sum by the plaintiff was without consideration and induced by the false representations of the defendant, all to the plaintiff's damage in the sum of $16,920, for which it demands judgment.

The defendant made a motion for an order requiring the plaintiff to serve an amended complaint—

"wherein it shall separately state and number all the facts constituting each cause of action, namely, its statement of the facts which constitute its alleged cause of action against the defendant for breach of the contract to publish the election notices referred to in the said complaint, on the 9th day of October, 1910, and its statement of the facts which constitute its alleged cause of action against the defendant for breach of the contract to publish the election notices referred to in the said complaint on the 16th day of October, 1910."

The learned Special Term, in its opinion, said:

"I am quite convinced that the contract before me cannot be said to be an entire one, but is divisible, and the defendant's motion is granted."

The difficulty with this view, as it seems to me, is that by the fourth paragraph of the complaint it is alleged that on the 4th of October

the defendant entered into a contract and agreement with the board of elections, wherein and whereby the defendant promised and agreed to publish the designated list on certain specified dates at an agreed price. There is thus set up one distinct and entire contract for the performance of one distinct thing, namely, the publication of the election notices on the prescribed dates. There is the further allegation of a breach of said contract, a false representation of performance of said contract, a payment upon the basis of full performance thereof, said payment having been induced by such false representation, and a demand for the recovery of the full amount so paid.

There is but one cause of action set forth in the complaint. The respondent cites People ex rel. Quinn v. Voorhis, 115 App. Div. 118, 100 N. Y. Supp. 717, reversed 186 N. Y. 263, 78 N. E. 1001; also 115 App. Div. 218, 100 N. Y. Supp. 927, affirmed 187 N. Y. 327, 80 N. E. 196, and Morning Telegraph Co. v. City of New York, 132 App. Div. 634, 117 N. Y. Supp. 496, affirmed 197 N. Y. 536, 91 N. E. 1117. What this court and the Court of Appeals had under consideration in those cases was the power and duty of the board of elections and the propriety of its designation of a certain set of papers, whether they met the requirements of the statute, namely: Did they advocate the principles of the political party polling the next highest number of votes for Governor at the last preceding election? In the course of the discussion it was held that the duty laid upon the board of causing the publication of the notices to be made during the period prescribed by statute was continuous; and, as that duty continued, if the board had made an erroneous selection, it could be compelled by mandamus to make a proper designation.

In the Morning Telegraph Co. Case, supra, this court said:

"There is no provision authorizing the board to make a contract for the complete publications which would restrict the power of the board to change the newspapers after one or more publications had been made. The board was required to 'cause to be published' these notices on certain specified days; and I can see nothing in the statute which would prevent the board from directing that the election notices should be published for two days in one set of newspapers and for the subsequent days in another set of newspapers. It is true that the board acted under a mandamus which was erroneously issued, but the action of the board was a legal designation of the newspapers in which the notices were to be published; and the plaintiff, having acted under it, was entitled to be paid."

There is no such situation presented here. If the board had designated the Evening Post, and had rescinded that designation after the Post had published for two days, and had then designated another paper, which had gone on and published the notices, each of those papers, for the time it had published under the designation, would be entitled to recover under the statute as interpreted by these decisions. But here there has been but one designation and one contract and alleged performance thereof. That contract, as alleged, is an indivisible contract. Nothing has occurred to alter, reform, or rescind it. A breach thereof is alleged and a payment induced by false representations of complete performance. The plaintiff is not attempting to recover what it paid for the publications on the 9th of October, nor what it paid for the publication on the 16th of October. It is

attempting to recover what it paid upon the whole contract; and therefore the complaint states but one cause of action.

It follows that the order appealed from should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. All concur.