THE PEOPLE ex rel. BENJAMIN W. WOOSTER, Respondent, *v.* EDWARD A. MAHER, Mayor, etc., Appellant.

While a mandamus against a public officer or municipality is a proper remedy to compel the performance of a ministerial duty, plainly prescribed, and that remedy may be invoked in behalf of any person interested in its performance, in case of failure *to* perform the duty, where the officer or body is clothed with a discretion either to do or omit to do the act, a mandamus can *only issue to compel a decision, in case of refusal to decide, and where a decision has been made the court cannot, on mandamus, review the decision or compel one the other way.*

*It seems,* the authorities of a city cannot legalize an obstruction of a city street so as to bar the public right, and a building projecting into a street, although originally built with the consent of the city, is an unlawful obstruction and a public nuisance, and the user, although long continued, is no obstacle to proceedings for its removal.

Under the provision of the charter of the city of Albany (§ 11, tit. 13, chap. 298, Laws of 1883), as amended in 1888 (Chap. 398, Laws of 1888), requiring the city engineer, where a building projects into the street, " upon the receipt of written directions from the mayor," to take summary proceedings for the removal thereof, a discretion is given to the *mayor to determine in any given case whether or not such proceedings* shall be instituted.

Accordingly *held,* that the court had no power to compel the mayor by mandamus to initiate such proceedings by giving the prescribed notice to the engineer; and that the discretion of the mayor in this respect was not affected by a resolution of the common council requesting him to take proceedings for the removal of the obstruction.

*It seems,* the common council, as commissioners of highways, might institute proceedings appertaining to their functions as such, for the removal of the obstruction.

(Argued February 6, 1893; decided February 27, 1894.)

APPEAL from order of the General Term of the Supreme Court in the third judicial department, made July 2, 1892, which affirmed an order directing the issuance of a peremp-

tory writ of mandamus which required defendant, as mayor of the city of Albany, to send written directions to the city engineer of the city of Albany to send written notice to the owner or person who erected or is now maintaining said porch or building as aforesaid, within ten days after receipt of said notice to remove the said building or porch, as aforesaid, to the range of the street laid down by the city engineer, under and pursuant to the provisions of section 11 of title 13 of chapter 298, Laws of 1883, as amended by section 10 of title 13 of chapter 398, Laws of 1888.

The facts, so far as material, are stated in the opinion.

*Matthew Hale* for appellant. The statute under which the mandamus was granted imposes no duty upon the mayor to give written directions to the city engineer. This is a matter within his discretion, and no mandamus lies to compel its performance. (*Howland* v. *Eldridge*, 43 N. Y. 457, 461; *People ex rel.* v. *Vil. of Saratoga Springs*, 54 Hun, 16, 20, 21; *People ex rel.* v. *Grant*, 58 id. 455; *People ex rel.* v. *Grant*, 126 N. Y. 473, 482; *People* v. *Chapin*, 103 id. 635; 104 id. 96; *People* v. *Barnes*, 114 id. 317, 326; *Noble* v. *U. R. R. Co.*, 147 U. S. 165, 171; *Cogswell* v. *N. Y., N. H. & H. R. Co.*, 105 N. Y. 319; 2 Dillon on Mun. Corp. § 639.) The peremptory writ should have been refused, because the term of office of the defendant had expired, and he was no longer mayor, and had no power to execute the writ at the time of the trial. (*People* v. *Suprs.*, 12 Barb. 217; *People* v. *Reardon*, 49 Hun, 425; *Secretary* v. *McGarrahan*, 9 Wall. 298; *U. S.* v. *Boutwell*, 17 id. 604; *People* v. *Excise Commissioners*, 7 Abb. Pr. 34; *People* v. *Board of Education*, 33 N. Y. S. R. 30.) Upon the merits and irrespective of the points above suggested, the judgment appealed from was erroneous. (*Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 N. Y. 98, 107; *Conkling* v. *N. Y., O. & W. R. Co.*, 102 id. 107; *Rauenstein* v. *N. Y., L. & W. R. Co.*, 136 id. 528; *Hoey* v. *Gilroy*, 129 id. 132; *Woodruff* v. *Paddock*, 56 Hun, 228, 291, 292; 130 N. Y. 618; *Ludlow* v. *Oswego*, 25 Hun, 260.)

*Franklin M. Danaher* for respondent. The relator was
entitled to a peremptory writ of mandamus as a matter of
right. (*People ex rel. v. Canal Appraisers,* 73 N. Y. 443;
§ 10, chap. 298, Laws of 1883; chap. 398, Laws of 1888.) An
appeal will not lie to the Court of Appeals from a judgment
of the Supreme Court awarding a mandamus, because the
granting or refusal of the writ was in the discretion of that
court, and it not appearing that that discretion has been
abused, this court will not interfere to review the proceedings.
(*People ex rel. v. Jeroloman,* 139 N. Y. 14; *In re Dederick,*
77 id. 595; *In re Sage,* 70 id. 223; *People ex rel. v. Ferris,*
76 id. 326; *People ex rel. v. Campbell,* 72 id. 497; *People ex
rel. v. Board of Police,* 107 id. 239.) Any projection that
interferes with the public right to use the street to its entire
width, including sidewalks, is an obstruction and a public nui-
sance. (*Flynn v. Taylor,* 127 N. Y. 596; *Cohen v. Mayor,*
113 id. 535; *People v. Thompson,* 98 id. 6; *Callanan v. Gil-
man,* 107 id. 365; *Clifford v. Dam,* 81 id. 56; 20 Abb. [N.
C.] 387; 2 Gray, 265, 270; 107 Mass. 234; *Hume v. Mayor,*
74 N. Y. 264; *Story Case,* 90 id. 124; 38 How. 67; 51 N.
Y. Super. Ct. 1; Penal Code, §§ 385, 387; 15 Abb. [N. C.]
250; 18 id. 124; 59 How. 277, 333; 12 Abb. [N. C.] 124; 52
N. Y. Super. Ct. 463; 5 N. Y. Supp. 580; 14 N. Y. 506, 524;
28 id. 396.) The permission given by the city of Albany to
the trustees of the Albany Female Academy to erect the
porch or portico of their building twelve feet beyond the
range of the west side of North Pearl street, was *ultra vires*
and absolutely null and void, and gave the academy no rights
in the street. (*S. V. O. Asylum v. City of Troy,* 76 N. Y.
108; *Story Case,* 90 id. 112; *Mahady Case,* 91 id. 148; *Lahr
Case,* 104 id. 268, 292; *Cohen v. Mayor,* 113 id. 532; *Aben-
droth Case,* 122 id. 1; *Reining Case,* 128 id. 157; *Hughes
Case,* 130 id. 14; *Egerer Case,* Id. 112; *In re Buffalo,*
131 id. 293, at 298, 299; *Williams Case,* 126 id. 96; *People
ex rel. v. Thompson,* 98 id. 11; *Milhau v. Sharp,* 27 id. 611;
*Williams v. N. Y. C. & H. R. R. Co.,* 16 id. 97; *M. E. Co.
v. Newton,* 4 N. Y. Supp. 593; 2 Dillon on Mun. Corp. § 660.)

The academy having been put into possession of the land under a written license from the city which asserted the public title, is estopped and precluded from questioning the city title in an action to recover possession of the same. (*Denning* v. *Roome*, 6 Wend. 656; *Bedlow* v. *N. Y. F. D. D. Co.*, 112 N. Y. 285; Washb. on Real Prop. 482; *Goode* v. *Gaines*, 145 U. S. 141.) The license was revocable and was rescinded in 1889, and no equitable estoppel arises because of acts done or money expended under it. (*White* v. *M. R. Co.*, 139 N. Y. 19.) Neither limitations nor adverse possession runs against the public in this matter. The time of occupancy gave no rights to the academy in the street. The public easement was not extinguished by adverse possession, nor was the authority of the public officers to remove or abate it. (*Bedlow* v. *N. Y. C. R. R. Co.*, 112 N. Y. 265; *S. V. O. Asylum* v. *City of Troy*, 76 id. 108; *Driggs* v. *Phillips*, 103 id. 82; *Bliss* v. *Johnson*, 94 id. 241; *Galway* v. *M. E. R. R. Co.*, 128 id. 144; *Pappenheim* v. *M. E. R. R. Co.*, Id. 436.) Relator's public rights in the streets which are co-extensive with the exterior bounds thereof, as seen, irrespective of any question of title, have been diminished by the porch. (*Cohen* v. *Mayor*, 113 N. Y. 535; *Driggs* v. *Phillips*, 103 id. 82; *Kellog* v. *Thompson*, 66 id. 88; *Clifford* v. *Dam*, 81 id. 56; *Bliss* v. *Johnson*, 94 id. 235, 241; *Craig* v. *Rochester*, 37 id. 411; *Com.* v. *Blairdell*, 107 Mass. 234; *Hyde* v. *Middlesex*, 2 Gray, 270; Wood on Nuisances [2d ed.], § 250; 113 N. Y. 535; 33 Hun, 301; *Flynn* v. *Taylor*, 127 N. Y. 596.) Relator's private property rights in and to North Pearl street have been curtailed by the academy porch. (*Flynn* v. *Taylor*, 127 N. Y. 596; *Callanan* v. *Gilman*, 107 id. 370; *Western* v. *McDermott*, L. R. [1 Ch. Div.] 499; Wood on Nuisances, §§ 777, 780.) The mayor had no discretion in the premises; his power was statutory and his duty peremptory, and he violated both when he refused to act (1) of his own volition upon proof that the portico projected beyond the range of the street; (2) when ordered so to do by a law of the city of Albany; (3) on demand of relator. The power to do

and act makes it the duty of the officer to execute the power, and where he refuses to act mandamus will compel him to; though the language used in the statute is permissive, the duty is peremptory. (*Minor* v. *M. Bank,* 1 Pet. 46 ; *City of Galena* v. *Amy,* 5 Wall. 705 ; *Wright* v. *Evans,* 2 Abb. Pr. [N. S.] 308 ; *Lord Manner* v. *Johnson,* L. R. [1 Ch. Div.] 673 ; *Western* v. *McDermott,* Id. 499, 502 ; *Stevens* v. *Gourlay,* 7 C. B. [N. S.] 112 ; *Olmstead* v. *McNall,* 7 Blackf. 387, 388 ; *King* v. *Gregory,* 5 Bar. & Ad. 555 ; *Watson* v. *Cotton,* 5 C. B. 51 ; *Bank* v. *Supervisors,* 138 N. Y. 95 ; High on Mand. § 416 ; *People* v. *Halsey,* 37 N. Y. 348 ; *Hart* v. *Mayor, etc.,* 9 Wend. 570 (n) ; *Milhau* v. *Sharp,* 27 N. Y. 612 ; *People ex rel.* v. *Supervisors,* 56 id. 252 ; *People* v. *Collins,* 19 Wend. 56, 65 ; *Groat* v. *Moak,* 94 N. Y. 128, 129 ; *People ex rel.* v. *Daley,* 37 Hun, 461.) If it should happen that the court decides that the mayor has discretionary power in the premises, mandamus will issue to compel the exercise of official discretion, especially where the discretion is abused and made to work injustice, or where the officer appears to be acting in bad faith. (14 Am. & Eng. Ency. of Law, 98, 99, 166 ; Merrill on Mandamus, §§ 37, 38–41.) The action does not abate by the expiration of Maher's term of office ; the writ, if issued, runs to his successors notwithstanding. The fact that Maher's term of office has expired, not having been pleaded, is not before the court. (*Styles* v. *Fuller,* 101 N. Y. 622 ; *Thompson* v. *U. S.,* 103 U. S. 480, 485 ; *People* v. *Champion,* 16 Johns. 61 ; *People* v. *Collins,* 19 Wend. 56 ; High on Ex. Rem. § 38 ; *People* v. *Suprs.,* 8 N. Y. 330 ; *County Commissioner* v. *Sellew,* 99 U. S. 624, 628 ; *State* v. *Warner,* 55 Wis. 271 ; *State* v. *Pickett,* 7 Lea, 709 ; *People* v. *Treas.,* 37 Mich. 351 ; *Maddox* v. *Graham,* 2 Metc. 56 ; *People* v. *Supervisors,* 100 Ill. 332 ; *Soutter* v. *City of Madison,* 15 Wis. 30, 31 ; *Pegram* v. *Comrs.,* 65 N. C. 114 ; *Hardie* v. *Gibbs,* 50 Miss. 604.) The word "as" between Maher's name and the title of the office would be surplusage and unnecessary, and is no part of the title of the action ; its absence does not indicate a personal action against

Maher. Where the writ describes and avers the representative character of the person the word "as" is not a part of the title. (*Thompson* v. *U. S.*, 103 U. S. 480–485; *City* v. *Kinney*, 9 id. 628; *Litchfield* v. *Hunt*, 104 N. Y. 550.) Chapter 311, Laws 1861, entitled "An act to amend the Revised Statutes in respect to highways," is not applicable. (*In re Lexington Ave.*, 29 Hun, 305; 92 N. Y. 629; *In re Woolsey*, 95 id. 141; *In re Mayor*, 34 Hun, 445; *Cook* v. *Harris*, 61 N. Y. 455; *Driggs* v. *Phillips*, 103 id. 77; *Walker* v. *Capwood*, 31 id. 51; *N. Y. O. Asylum* v. *City of Troy*, 76 id. 114.) Defendant's exceptions to the findings of fact present no questions reviewable by this court. The findings he excepted to are supported by the evidence; the refusal to find an abandonment is not error, because it has no pretense of any proof to support it. (*Bedlow* v. *F. D. D. Co.*, 112 N. Y. 263; *Hannigan* v. *Allen*, 127 id. 639; *Wetmore* v. *Bruce*, 118 id. 320; 71 id. 137; 79 id. 224; 109 id. 316, 526.) Defendant's exceptions to the admission of evidence present no reversible errors. (*Lerche* v. *Brasher*, 104 N. Y. 161; *Kane* v. *N. Y. C. R. R. Co.*, 125 id. 187.)

Andrews, Ch. J. This is a proceeding by mandamus, and the judgment from which the appeal is taken directs the mayor of the city of Albany to give written directions to the city engineer to notify the owner of the building on Pearl street known as the Albany Female Academy to remove the porch of the building, which the judgment finds projects thirteen feet and four inches into Pearl street, within ten days after receipt of the notice, pursuant to the provisions of section 10, title 13 of chapter 298 of the Laws of 1883, as amended by chapter 398 of the Laws of 1888.

The question whether the porch projected into the street and the extent of the alleged encroachment was litigated on the trial. If the affirmance of the judgment depended on the question whether in fact the alleged encroachment existed, we should have no difficulty. Upon the facts found and proved there can be no reasonable doubt that the porch is an unlaw-

ful obstruction in the street and a public nuisance.   Although originally built with the consent of the city, the municipality could not legalize the structure so as to bar the public right, and the user, though long continued, is no obstacle to proceedings for its removal.   All the remedies, public and private, for the abatement of encroachments in highways or public streets, are open and unaffected by the colorable authority under which the porch was erected, or by acquiescence in the unlawful user.   (*St. Vincent's Orphan Asylum* v. *City of Troy*, 76 N. Y. 108, and cases cited.)   But the question here is whether, under the provision of the city charter referred to in the judgment, the mayor of the city may be compelled, under the coercion of a writ of mandamus, to direct the city engineer to give the notice therein specified. When such direction is given by the mayor, either voluntarily or by compulsion, the duty imposed on the city engineer is mandatory and imperative.   Upon receiving such direction he must give the notice of ten days to the owner, and if the owner neglects or refuses to comply with the notice, he must then cause such removal to be made, in the first instance at the expense of the city, to be reimbursed by an assessment on the property of the owner.   The city engineer would have no discretion, but would be bound to act in accordance with the peremptory direction of the statute.   Is the authority given to the mayor to initiate these summary proceedings, by directing the city engineer to give notice to the property owner, also a mandatory duty, or was it the intention of the charter to leave it to his judgment and discretion whether this method of enforcing the public right should be pursued?   The right to proceed against the mayor by mandamus depends upon the answer to this question.   There is no dispute as to the rule of law that a mandamus against a public officer, or a municipality, is a proper remedy to compel the performance of a ministerial duty plainly prescribed, and may be invoked in behalf of any party interested in its performance, on the failure of the officer or public body to do the act or thing required.   But where the officer or body is clothed with a discretion, and it may do or

omit to do the act or thing according to the judgment of the
person or body authorized to act, then a mandamus can only
issue to compel a decision, in case of a refusal to decide, and
when a decision is made the remedy by mandamus ends. The
court cannot on mandamus review the decision made, or com-
pel a decision the other way, because the court may disagree
as to the justice or propriety of the conclusion reached.
The broad distinction is between duties mandatory and
peremptory and those involving discretion and judgment.
In the one case the public agent cannot refuse to act, or
to do the thing required, and in the other the court is
not permitted to substitute its judgment for that of the
officer or body clothed by the law with the power to decide.
There is sometimes difficulty in determining whether a duty
is peremptory or discretionary. Language permissory in form
is sometimes construed as imperative in meaning. It is not
infrequent that a statute declares that it shall be lawful for an
officer or body to do this or that, or that this or that thing may
be done, using language which in ordinary acceptation imports
permission, and not command, and in many such cases the
duty is held to be imperative. It is a question of the real
meaning of the legislature to be ascertained from a considera-
tion of the nature of the authority, the character of the public
agency, and the public duty involved. For example, it has fre-
quently been held that where authority is given to raise money
by taxation for public purposes or to discharge a municipal
obligation, the duty to exercise the authority may be imperative,
although conferred in permissory language. On the other hand,
there are many occasions for vesting in public agencies actual
discretion in respect to the exercise of powers conferred,
because the legislature cannot always anticipate the circum-
stances which may call for their exercise, or which may require
that they should be held in abeyance. (*People ex rel.* v.
*Fairchild*, 67 N. Y. 334; *People ex rel. Hammond* v. *Leon-
ard*, 74 id. 443; *People ex rel. Francis* v. *City of Troy*, 78
id. 33; Dillon on Municipal Corporations, § 98; High on
Extraordinary Rem. §§ 24, 42.)

SICKELS—VOL. XCVI.     43

In the light of these familiar principles we are to consider whether the mayor of Albany had a discretion to refuse to issue the direction to the city engineer, which the judgment below requires him to give. It appears by reference to the charter of Albany (Laws of 1883, chap. 298) that the original section relating to the summary removal of buildings projecting into streets is one of the sections of title 13, entitled " city engineer and surveyor." This title prescribes the duties of that officer, and the section as originally passed contained no reference to the mayor, and conferred upon him no authority or duty, but left it to the engineer and surveyor on his own motion to institute the proceedings (§ 11). This general and unguarded power might lead to very grave consequences, and place upon the city onerous responsibility. The amendment of 1888 (Chap. 398, title 13, § 10) for the first time made the mayor a necessary party to any proceedings instituted for the summary removal of buildings standing upon or encroaching on the streets. The amendment provided that the city engineer " shall, upon the receipt of written directions from the mayor," send written notice, etc. It took from the city engineer the power to institute the proceedings independently of the mayor, which he possessed under the original section, and made the preliminary direction of the mayor essential before any action should be taken by the subordinate officer. It is, we think, quite manifest from the history of this provision, as well as from its language, that it was the intention of the legislature to confide to the mayor the determination whether summary proceedings under that section should be commenced in a given case. There was great propriety in this. The city, if it proceeded to tear down buildings under this section, would do so at the hazard of being able to justify the act by showing that the encroachment in fact existed, and to the extent of such interference. The decision of the mayor would not bind the property owners. The owners whose buildings were threatened with demolition, might upon cause shown to the satisfaction of the court procure an injunction. But they would not be bound

to do so, but might await the trial of the right in an action for damages. The city had other remedies by ordinary procedure at law to remove the obstruction, in pursuing which it would incur no hazard. It seems to us that it was the plain intention of the section, as amended, to confide to the judgment and discretion of the mayor the determination of the question whether proceedings should be taken under this section of the charter, and if this is the true meaning of the statute, the court had no power by mandamus to compel him to initiate such proceedings.

We think the situation was not changed by the resolution of the council passed April 15, 1889. That resolution was in form a request by the council to the mayor to take proceedings for the removal of the porch under the section in question. It was adopted in pursuance of the report of the law committee of the council previously made, in which report it was said: "The passage of this resolution will, however, operate simply as a recommendation to the mayor, with whom the matter is discretionary." It is reasonable to suppose from the form of the resolution adopted that it was acted upon in this view. The statute left the matter to the judgment of the mayor, and the council could not change the character of the duty imposed and make that mandatory which under the statute was discretionary. The common council as commissioners of highways might institute proceedings appertaining to their functions as such, but the power to change the statute was not among them.

These views lead to a reversal of the order below. Judgment of Special and General Terms reversed and proceedings dismissed, with costs against relator.

All concur.

Judgment reversed.