(84 Misc. Rep. 118)

## In re WALKER.

(Supreme Court, Special Term, Erie County. January, 1914.)

1. THEATERS AND SHOWS (§ 3*)—LICENSES—CONSTRUCTION OF ORDINANCE.

Section 2 of a city ordinance provided that no moving picture show should be maintained in any residence district without the consent of the common council approved by the mayor, but that this should not apply to any such show located, built, or constructed and in use for such purposes prior to December 1, 1912. Section 3, after directing the mayor to issue the licenses authorized by section 2, provided that the mayor "may" also grant a permit to use any building or premises used on and prior to December 1, 1912, for the purposes of a moving picture show, that such permit should not be valid without the approval of the health commissioner and board of fire commissioners, and that such permit should not be granted nor approved by the health and fire commissioners until all laws and ordinances relating to health and public safety, and all reasonable rules and regulations of the health and fire departments, had been complied with. *Held*, that section 3 was intended to confer on the mayor the power of licensing all moving picture shows not provided for in section 2, and hence he had power to license moving picture theaters or buildings located and constructed prior to December 1, 1912, though not in actual use on that date, as otherwise the power to license such theaters would be lodged in no city official.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. § 3.*]

2. THEATERS AND SHOWS (§ 3*)—LICENSES—CONSTRUCTION OF ORDINANCE.

Though section 3 used the word "may," it did not give the mayor an absolute and unqualified discretion to grant or withhold licenses, and where a theater, lawfully constructed prior to December 1, 1912, under a lawful permit, had complied with all legal requirements as to health and public safety from fire and the reasonable regulations of the city health and fire departments, it was the mayor's duty to issue the necessary permit, since the ordinance, if otherwise construed, would authorize the mayor not merely to regulate, but to destroy vested property rights.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. § 3.*]

3. THEATERS AND SHOWS (§ 1*)—POWER OF CITY.

Where a city authorized a building to be made into a moving picture theater, and the owner incurred expenses in reconstructing it, the city had power only to regulate and not to prohibit its use for moving picture purposes.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 1; Dec. Dig. § 1.*]

Application by Arthur P. Walker for a writ of mandamus against Louis P. Fuhrman. Writ granted.

Clark H. Hammond, of Buffalo, for relator.

William S. Rann and Harry D. Sanders both of Buffalo, for mayor.

WHEELER, J. The application is for a writ of mandamus to compel the mayor to issue a license to the applicant to operate a moving picture show at 775–777 Seneca street, in the city of Buffalo.

It appears from the papers that this building, or the ground floor thereof, was converted into a moving picture show in 1909, and was operated as such until some time about June, 1911; that about that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

time the giving of exhibitions was discontinued, although the theater itself remained unchanged until the fall of 1913, when in September of that year the relator leased the theater from its owners, with the intention of reopening it for moving picture exhibitions. He made some alterations in its arrangement; none that increased, but all of which diminished the dangers incident to the conduct of such a theater. It is alleged, and not denied, that the place has heretofore been licensed as a moving picture theater for three successive years prior to the present application. It is not claimed but that the relator has fully complied with all the building and fire laws and safety ordinances and regulations of the city. The mayor, however, has declined to license the theater, upon the ground that, in his opinion, there is danger of fire in the operation of the theater as such.

When a power or discretion is vested in a public official like the mayor of a city, this court should not interfere with the exercise of such a discretion, but let the responsibility for its proper exercise rest where the law has placed it. It is not our purpose, at this time, to substitute the discretion of the court for that of the mayor. The question, however, remains whether, under the circumstances of this case, such a discretion has been vested in the mayor.

It is contended by the relator that, having complied with all the building laws and ordinances of the state and city, he is entitled to his license as matter of right, and that the mayor has no power to withhold it. If such is the case, the mandamus asked for must issue.

[1, 2] In March, 1913, what is known as "Chapter L of the Ordinances of the City of Buffalo" was adopted. This chapter relates to moving picture shows and by section 2 of the chapter, it is prescribed, in substance, that no moving picture show shall be maintained in any residence district of the city "without the consent of the common council approved by the mayor," etc. In this case the common council had, by resolution, given its consent, but the mayor has withheld his approval for reasons satisfactory to himself, and in part, at least, on the suggestion and advice of the state fire marshal. The ordinance contains provisions as to the procedure to be followed by the applicant to obtain official action, which it is not necessary to specify here.

The requirement of the consent of the common council and the approval of the mayor, however, only applies to moving picture shows built and maintained after December 1, 1912, and not those built or constructed prior thereto; for section 2, among other things, expressly declares:

"The provisions of this section shall not apply to any moving picture show as shall have been located, built, constructed and in use for said purposes prior to December 1, 1912."

The theater for which the relator seeks a license was in fact located and built, and had been in use prior to December 1, 1912. It is manifest, therefore, that this particular theater does not require the "consent of the common council approved by the mayor," for a license.

What municipal authority was there authorized to license moving picture shows of this class? Section 3 of the same chapter undertakes to make provision for licensing of theaters located and constructed pri-

or to December 1, 1912. After directing that the mayor shall issue licenses authorized under section 2 of the chapter, section 3 provides:

"The mayor may also grant a permit to any firm or corporation to use any building or premises which are and have been used on and prior to December 1, 1912, for the purposes of a moving picture show. Such permit shall not be valid without the approval of the health commissioner and the board of fire commissioners indorsed thereon. All permits granted as hereinbefore provided may be revoked by the mayor for good cause after a fair hearing. Such permits shall not be granted, nor shall the approval of the health and fire commissioners be given or indorsed on such permits until all laws and ordinances relating to health and public safety from fire and to moving picture shows, and the reasonable rules and regulations of the health and fire departments have been complied with; nor, in the case of a moving picture show, until the requirements of chapter XXXIV of the City Ordinances, so far as applicable, shall have been complied with. All such permits shall expire on the 30th day of September next following the issuing thereof."

The corporation counsel argues that by the wording of this section of the ordinances, in order to enable the relator to take the benefit of its provisions, the building must have been in actual use for a moving picture show on the 1st day of December, 1912, and that, inasmuch as exhibitions in this particular theater had been suspended for a year or more prior to December 1, 1912, the relator does not come within the purview of the section. The court, however, is of the opinion this section should not be given the restricted meaning contended for, but that section 3 should be read in connection with section 2, and, when so read, it is manifest that it was the intention to confer on the mayor the duty of licensing all moving picture shows not provided for in the manner prescribed in section 2. Otherwise the power to license moving picture theaters or buildings located and constructed, but which happened not to have been in operation on December 1, 1912, would be lodged in no city official. Chapter L was evidently intended to cover the entire field of moving picture shows, and we can reach no other conclusion than that by section 3 the power and duty of licensing this theater and others similarly situated, located, and constructed prior to December 1, 1912, is lodged in the mayor alone. If this be true, then the question remains, Had the mayor the right to withhold a license when the applicant has complied with "all laws and ordinances relating to health and public safety from fire, and to moving picture shows, and the reasonable rules and regulations of the health and fire departments"?

It is true that section 3 of the Ordinances reads: "The mayor may also grant a permit," etc. The counsel for the mayor, in opposing this application, contends that the word "may" as here used, vests a large discretion in the mayor to grant or withhold a license as his judgment dictates. The relator, on the other hand, insists that when any citizen has met all lawful prerequisites of law relating to health, public safety from fire, and the reasonable regulations of the health and fire departments of the city, he is entitled to his license as a matter of right, and that the mayor cannot lawfully refuse the necessary permit, and that the issuing of such a permit is a ministerial duty plainly prescribed. Which conflicting view is the law of this case? It was said in the

case of People ex rel. Wooster v. Maher, 141 N. Y. 337, 36 N. E. 397, that:

"Language permissory in form is sometimes construed as imperative in meaning. It is not infrequent that a statute declares that it shall be lawful for an officer or body to do this or that, or that this or that thing may be done, using language which in ordinary acceptation imports permission, and not command, and in many such cases the duty is held to be imperative. It is a question of the real meaning of the Legislature to be ascertained from a consideration of the nature of the authority, the character of the public agency, and the public duty involved."

Applying some of these tests to the situation in hand, we may judge and determine whether it was the purpose and intent of the framers of the ordinance in question to vest in the mayor an absolute and unqualified discretion to grant or withhold a license for a moving picture show when once constructed and authorized under former competent authority. If the mayor may withhold a license, then it is within his power to destroy valuable property rights of owners who, acting under competent authority, have invested large sums in the construction of moving picture shows, by simply refusing to renew such licenses when such licenses expire. It is one thing to refuse a license to build and construct in the first instance, and quite a different thing to refuse to permit the continued use of such a theater when once lawfully constructed under a lawful permit. Beyond question it is always a legitimate exercise of authority to regulate and control, but quite a different matter to destroy by a refusal to permit its use at all. Can it be fairly said to have been the purpose and intent of the framers of the ordinance to confer upon the mayor the right to destroy vested property rights by withholding a license, so long as the owner or his lessee has complied with every legal requirement as to the construction of the theater, and the provisions of law as to the safety of the public? Is it not fair to assume that the framers of the ordinance intended that when these requirements have been complied with, the license should follow as matter of right? Can it be fairly argued that the framers of the ordinance intended that the mayor might, in his discretion, exact as a condition for the granting of a license more than the law itself exacts? If such had been the intention, would not the power to withhold have been expressed in more definite and explicit terms? The courts have repeatedly construed statutes and ordinances so as not to destroy, but to preserve, vested property rights.

In the case of City of Buffalo v. Chadeayne, 134 N. Y. 166, 31 N. E. 444, Chadeayne had been granted a permit by the common council to erect several frame buildings within the city of Buffalo. Afterwards, and subsequent to his entering into contracts for their erection and the starting of the work, the common council revoked the permit previously granted, but the buildings were erected, and Chadeayne was prosecuted for so doing. The Court of Appeals held that there was no power given the common council to deprive the defendant of any vested property rights in the buildings. It said:

"Having in view the purpose for which the provision was enacted, it seems to us clear that it was not intended to give to the common council the power to deprive persons of their buildings which had previously been erected, or

of those which should be thereafter erected, in whole or in part, with the permission of the common council, and that its power is limited to the prevention of the erection of wooden buildings in the future without its permit."

See, also, People ex rel. Lodes v. Dep't of Health, 189 N. Y. 196, 82 N. E. 187, 13 L. R. A. (N. S.) 894; Hinman v. Clarke, 121 App. Div. 110, 105 N. Y. Supp. 725; Dobbins v. Los Angeles, 195 U. S. 223, 25 Sup. Ct. 18, 49 L. Ed. 169; City of Lowell v. Archambault, 189 Mass. 70, 75 N. E. 65, 1 L. R. A. (N. S.) 458.

[3] So we think that the city, having once given its permission that the relator's building should be made into a moving picture theater, and the owner having incurred expense in its construction, the city's power over such building extends simply to regulating, and not to prohibiting, its use for those purposes. In any event, the present ordinance (section 3 of chapter L of the City Ordinances) should be given a construction which is in harmony with these well-recognized principles of law, and where the word "may" is used in that section, it must be deemed imperative rather than merely permissive.

We reach the conclusion that the mandamus prayed for should be granted.

Of course the mayor's permit, when granted, is to be indorsed with the approval of the health and fire commissioners, as prescribed by section 3 of chapter L of the City Ordinances.

So ordered, with $25 costs of this application to the relator.