ESTES *v.* MUSKEGON COUNTY AGRICULTURAL & DRIVING
PARK ASSOCIATION.

DEEDS — CONDITIONS SUBSEQUENT — EQUITY — ENFORCEMENT — RE-
VERSION.

Where plaintiffs conveyed to a driving park association a
parcel of land, upon condition, as expressed in the in-
strument, that the property be used as a fair grounds
and driving park and for no other purpose, and should
revert to the grantors if the second party should abandon
them for the purposes described, evidence, in an action
of ejectment, that defendant association for upwards of
eight years had not used the land for such purpose, had
allowed the buildings to become dilapidated, that one of
the officers of the association took control of the grounds,
kept and exercised horses on the track, and permitted
other persons to do so, also permitting a local driving
club to use them for a season, for rent, and permitting
baseball games to be held there, that meetings of the
stockholders or those who held certificates for shares of
stock were called annually but the stockholders were not
all notified and no records were kept of the proceedings,
*held,* to sufficiently establish the title of plaintiffs by
reversion pursuant to the condition of the deed.

Error to Muskegon; Sullivan, J. Submitted April
23, 1914. (Docket No. 82.) Decided June 1, 1914.

Ejectment by Seth D. Estes against the Muskegon
County Agricultural & Driving Park Association and
others. Plaintiff having deceased, the cause was re-
vived in the names of his heirs, Simeon Estes and
others. Judgment for plaintiffs. Defendants bring
error. Affirmed.

*Turner & Turner,* for appellant.

*Cross, Vanderwerp, Foote & Ross,* for appellees.

OSTRANDER, J. Seth D. Estes and his wife, by in-
denture dated August 6, 1875, for a stated considera-
tion of $1, conveyed certain premises to the Muskegon

County Agricultural & Driving Park Association, of Muskegon county, Mich., with the usual covenants of seisin, against incumbrances, and for quiet enjoyment. Following the covenants and concluding the instrument is:

"Said land to be used for the purposes of fair grounds and driving park and for no other purpose, and to revert to said first parties, their heirs and assigns when abandoned by said second party for the purpose aforesaid."

In 1910 the grantor made demand for possession of the premises from persons then occupying the same, and later, and in June, 1911, began this action of ejectment against the association grantee and the persons in possession. The cause has been twice tried, and plaintiff has recovered. It is plaintiff's contention that since the year 1902 the premises have not been used for the purposes stated in the deed, and for no other purpose, but, so far as such stated use is concerned, have been abandoned. It is stated in defendant's brief that:

"It was the claim of the defendant and appellant that naked conditions in a grant create no agreement on the part of a grantee accepting a deed, and that specific performance of such conditions are not enforceable by action."

Beyond this there is apparent no contention that the grant was not upon a valid condition subsequent, entitling plaintiff to recover in this action upon proof of breach of the condition. The contention presented in argument is that upon the question of breach of the condition improper testimony was admitted and improper instructions were given to the jury. The testimony for plaintiff tends to prove that the defendant association was organized, although irregularly organized, under the provisions of chapter 71 of the Compiled Laws of 1871; its articles of association dated May 29, 1875, acknowledged June 7, 1875, were

filed with the clerk of Muskegon county June 14, 1875. These articles appear to have been adopted at a meeting held May 18, 1875, and at an adjourned meeting had May 21, 1875, a resolution was adopted tendering the thanks of the association to certain persons, among them S. D. Estes, for liberal donations of land for fair grounds and driving park. The by-laws provided, among other things, that no person owning less than four shares of stock (the par value of which was fixed at $25 each) or a life member could be eligible to the office of director, and that all persons paying into the treasury the sum of $1 annually should have the privilege of entering articles and animals for exhibition at a fair without charge, and be entitled to vote for officers. It does not affirmatively appear that the by-laws were adopted. Capital stock was fixed at $10,000, and certificates for shares were issued. Section 2 of the act referred to provides that an association organized under the act may take, purchase and hold real estate for the purpose of the incorporation, "but for no other purpose."

The defendant association paid nothing for the land sought in this suit to be recovered. It was one of several parcels conveyed to the association upon condition. The land was fenced, buildings erected, a race track with grand stand erected, together with a dwelling house for a caretaker. Agricultural fairs were held until and including the year 1902; the race track being used for horse racing. The buildings became dilapidated, some fell down, the lumber of which they were built was some of it taken and carried away, and when this suit was begun few were left except the grand stand and stables. After 1902 one John Williams, claiming to be the secretary of the defendant association, took charge of the grounds, kept and exercised horses there, and other men kept and trained horses there. A local driving club used them one season, paying Williams something for their use.

Baseball games have been held there, football games, automobile races, and Wild West shows. Such income as there was Williams used in repairs. It was his custom to call a meeting of stockholders each year, make a report, and render an account. He regarded as stockholders only those who held certificates for shares of stock. No records of these events were produced. Williams himself claims rights as an assignee of one or more of the certificates of stock originally issued by the association. It appears that since 1902 there has been no semblance of any use of the grounds by the defendant association for any purpose of its organization.

The objection that in introducing much of the testimony a collateral attack was made upon the organization and existence of the defendant association seems to me to be without merit. The testimony, some of it, did tend to show the passing of the association as an entity in fact, whatever it may be said to be in law, but the purpose of its introduction plainly was to prove that there had been, in fact, an abandonment of the premises; that they had not been used for years for the purposes of the association, and had been used for other purposes. The testimony was well calculated to establish this fact.

It is contended that in his charge to the jury the court did not properly instruct them about what facts must be established to warrant the conclusion that the premises had been abandoned. It is not important that a discussion of the matter be undertaken. The court might properly have said to the jury that the fact that the land had for years been used, not for the purposes of the defendant association, but for other purposes, was established, as well as the fact that for years the defendant association had not performed any of the functions which it was organized to perform—functions the performance of which alone justified its continued legal existence. It would

have been proper to instruct the jury that, whether it was or was not legally in existence, the defendant association was actually, so far as using the premises for association purposes is concerned, exercising no corporate franchise; that from the established facts intention to abandon the premises might be found. What the association did is important as evidencing, or failing to evidence, a purpose to continue to use the grounds. In this view of the matter, the errors assigned become unimportant.

It is undoubtedly true, as is contended by defendant, that mere lapse of time, mere failure to use the premises, is not, in most cases, conclusive evidence of abandonment or of an intention to abandon. But mere lapse of time, mere failure to use, may be of more significance in one case than in another. Plaintiff's case does not rest upon lapse of time merely, but upon the failure of a corporation grantee (a corporation existing for the purpose of the designated use, a corporation organized to use the premises for definite purposes) to exercise for years its franchise, to use them at all for the purposes of its existence, which are the identical purposes stated in the conditional grant of the lands.

No prejudicial erorr is pointed out, and the judgment is therefore affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.