Argued November 30; affirmed December 30, 1943

# CLARK *v.* JONES ET AL.

(144 P. (2d) 498)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK and HAY, Associate Justices.

*L. H. Brown,* of Spokane, Wash., and *Thomas G. Greene,* of Portland (Brown & Huneke, of Spokane, Wash., and Thomas G. Greene and Thomas G. Greene, Jr., both of Portland, on the brief) for appellant.

*J. M. Hickson,* of Portland, for respondents.

BELT, J. This is a suit to determine the title to a one-acre tract of land in the eastern part of Multnomah county, Oregon. The land in controversy was, by warranty deed dated March 24, 1886, conveyed by William B. Jones and Mary, his wife, to School District No. 10, in Multnomah county. The granting clause and the habendum clause of the deed each contained the following limitation: "* * so long as the same shall be used for school purposes". The plaintiff and the other heirs of the grantors assert that there has been a cessation of use of the property for school purposes and that, by reason thereof, title to same *ipso facto* reverts to them. The defendants-respondents contend that there has been no non-user of the property in question which would operate as a forfeiture of the title.

The circuit court held there was no reversion of title and from such decree, the plaintiff appeals.

It is conceded by respondents that the conveyance created an estate of conditional limitation and not one upon condition subsequent. The words, "so long as" connote a time limitation or duration of the estate. In the instant case, the grantors, in effect, said to the

school district, "We convey this estate to you to have and to hold forever so long as you use the property for school purposes, but when you fail so to do, the property will at once revert to us or our heirs or assigns."

■ In an estate on condition subsequent the title does not revert upon the mere breach of the condition. It is still necessary for the grantor, in order to regain title, to manifest an intention to terminate the estate. This is usually done by exercising the right of re-entry. In estates of conditional limitation a reverter *ipso facto* occurs. In such estates no action on the part of the person creating the same is necessary to terminate it as that is accomplished by the happening of the event itself.

As to the distinction between these two qualified or determinable estates, see: Thompson on Real Property (Permanent Edition) § 2158; 19 Am. Jur. 489, § 29; Restatement of the Law of Property, § 44; 18 Oregon Law Review p. 63; *Magness v. Kerr,* 121 Or. 373, 254 P. 1012, 51 A.L.R. 1466.

While much space in the briefs is devoted to a discussion of the difference between these estates, we think it immaterial so far as determining whether there has been a breach of the condition of the conveyance. If the event which is to terminate the estate has not occurred, it is immaterial whether the provision in the deed is a condition subsequent or a conditional limitation. If the event has occured, the distinction between the two estates is likewise unimportant in this case, since the plaintiff exercised the right of re-entry. In other words, if there has been a breach of the condition, the plaintiff would be entitled to prevail whether a conditional limitation or a condition subsequent is involved.

The sole question is whether or not, under all the facts and circumstances as disclosed by the record, the non-user of the property for school purposes was of such extent and character as to operate as a forfeiture of the grantee's estate. Did the grantee school district, or its successor in interest, fail to comply with the purpose and spirit of the conveyance?

After execution of the deed in 1886, School District No. 10 maintained school continuously on the property in controversy for a period of 54 years, or until June, 1940. In 1923, a new brick school house, having modern lighting, water and automatic heating systems, was erected on the premises at a cost of about $15,000. The land without the buildings is worth about $100. It is stipulated that no school was conducted on the property in question from June 1, 1940, to September, 1941, but that it has been maintained continuously since that time. The school, which is located in a rural community, has an enrollment at the present time of approximately 50 pupils. On August 1, 1940, School District No. 10 was duly consolidated with School District No. 20. The pupils from the former district, or Cedar school, were transported by bus during such school year to the school at Troutdale (District No. 20) which was maintained by the consolidated district.

About the middle of the school year in 1940 some of the plumbing and electric fixtures and movable desks and seats were taken from the Cedar school and placed in the Troutdale school. The blackboard in one room of the Cedar school was also removed, as was one of the built-in cabinets and a drinking fountain. The electric current and water, however, were not disconnected. The oil for the automatic burner was replenished and the heat at several times during the winter

of 1940-1941 was turned on to prevent water pipes from freezing. Insurance on the building was at all times maintained. Inspection of the property was regularly made by the school officers and a watchman was employed on Hallowe'en to protect it.

Three weeks before plaintiff undertook to take possession of the land in controversy, on August 13, 1941, by having a padlock put on the schoolhouse door and posting trespass notices—all of which was unnecessary if an estate of conditional limitation is involved—a carpenter and painters were employed by the board of directors of the consolidated district to repair the Cedar school and put it in condition for use in September, 1941. It is only fair to say, however, that such employment took place after the plaintiff had, on March 4, 1941, made known to the directors her claim of a reverter of the estate. The Cedar school was operated in the fall of 1941—the property temporarily removed having been restored—and has been maintained ever since. Plaintiff commenced suit to quiet title on August 13, 1941.

We are unable to see much equity in the claim of plaintiff that the defendant school district, under the circumstances, has forfeited its interest in the estate in controversy by reason of non-user of the property for one school year. This one-acre rural tract, when conveyed in 1886, had slight value. School has been maintained on the property for over half a century and the grantor's remaining acreage has, by reason thereof, been enhanced in value. A modern brick school building is now on the premises. It would seem that a court of equity should be reluctant to declare a forfeiture—a thing not favored in law—unless the evidence shows the failure to use the property for school purposes was

of such extent and character as to violate the purpose and spirit of the grant. A condition, when relied upon to work a forfeiture, is construed with great strictness: *Raley v. Umatilla County,* 15 Or. 172, 13 P. 890, 3 Am. St. Rep. 142; Thompson on Real Property (Permanent Edition) § 2096. It is not every technical breach of condition that will operate as a forfeiture. Certainly nonuser for a limited period of time, not inconsistent with the purpose and spirit of the limitation in the deed, will not terminate the estate. There must be substantial evidence of a willful design by the grantee or its successor in interest to disregard the limitation imposed upon the estate before a court is authorized to declare a breach of the condition: *Rose v. Hawley,* 141 N.Y. 336, 36 N.E. 335; *Bonniwell v. Madison,* 107 Iowa 85, 77 N.W. 530; Jones on Real Property § 680. As said in 26 C.J.S. 490, Deeds § 154:

> "When maintenance or use is part of the condition, there must be such neglect to maintain as to indicate an intention not to comply, in order to constitute a breach of condition; it must be shown that the spirit and purpose of the condition have been willfully disregarded by the grantee to establish such breach as will authorize a reentry by the grantor."

Here we think there was only a temporary suspension of the use of the property for school purposes, which was occasioned by consolidation of the districts. The evidence does not warrant a reasonable inference of abandonment. We believe the evidence fairly indicates an intention to continue use of the property for school purposes and that there was no substantial breach of condition: *Rowe v. City of Minneapolis,* 49 Minn. 148, 51 N.W. 907; *Estes v. Agricultural Association,* 181 Mich. 71, 147 N.W. 553; *Town of East Greenwich v.*

*Gimmons,* 34 R.I. 526, 84 A. 1008; *Gage v. School District,* 64 N.H. 232, 9 A. 387; *Crane v. Hyde Park,* 135 Mass. 147; Thompson on Real Property (Permanent Edition) § 147. There is no claim that this property was ever used for a purpose different from or inconsistent with that specified in the deed. Plaintiff's case is based solely upon an alleged cessation of use.

No case based upon a similar factual situation has been cited—and there is none that we have been able to find—which supports the contention of appellant. In *Fall Creek v. Shuman,* 55 Ind. App. 232, 103 N.E. 677, relied upon by appellant and involving a similar limitation, the court held there was a termination of the estate by reason of the abandonment of the use of the property as specified in the deed. No school was conducted from 1908 to 1913. The court said:

> "At the time of removal of the furniture from the building in August, 1908, it was the intention of the trustee to discontinue and abandon the school at that place, and from that time there has been no school on the premises, nor effort made to re-install the same."

The appellate court said the special findings of fact by the lower court that the school trustees intended to abandon the school were conclusive. It is not so here as the evidence negatives such intention. In *Malone v. Kitchen,* 79 Ind. App. 199, 137 N.E. 562, land was conveyed to a school district to be held "so long as the foregoing land shall be used for a public school." No school was conducted after April, 1920. In the summer of 1921, the trustee gave notice that, on August 31, 1921, he would sell the school building to the highest bidder. Obviously, such a proposed sale would clearly

indicate an intention to discontinue use of the property for a public school: *Johnson v. Lane,* 199 Ark. 740, 135 S. W. (2d) 853.

We conclude that the temporary suspension of the use of the property for school purposes, under the facts and circumstances shown by the evidence in this case, was not of such extent and character as to effect a forfeiture.

The decree is affirmed. Respondents are entitled to costs and disbursements.