Argued October 26, affirmed November 18, 1959

# CITY OF PRAIRIE CITY *v.* BLUE MOUNTAIN HOSPITAL DISTRICT

### 346 P. 2d 377

*Charles R. Cater,* La Grande, argued the cause and filed a brief for appellant.

*James R. Moore,* Portland, argued the cause for respondent. With him on the brief were Mautz, Souther, Spaulding, Denecke & Kinsey, and John L. Schwabe, all of Portland.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, REDDING and KING, Justices.

SLOAN, J.

The plaintiff city seeks to revoke a sale of a hospital building and facilities to the defendant hospital district. It prays that title to the property involved revert to the city. It is alleged that the transfer of the property was in violation of specific provisions of the city charter of Prairie City. For convenience we will refer to city as plaintiff and to the district as defendant. A review of the facts and the language of the charter is required.

Prior to 1949, plaintiff owned and operated a thirty-bed masonry, fire-proof hospital in Prairie City. It was used by the residents of the community as well as by others in Grant county. In that year the residents of Grant county apparently became interested in forming a county-wide hospital district permitted by Oregon Laws 1949, ch 548. The original

cost of the hospital had been paid from the proceeds of general obligation bonds issued by plaintiff. For some years the hospital had operated at a substantial loss and at the time of the transaction in question, December 1950, the unpaid deficit for operation of the hospital amounted to about $30,000. The unpaid bonded indebtedness for the original construction was about $25,000. It requires no fiscal expert to prove that this was a burden to the community.

In anticipation of the formation of a county-wide hospital district, the citizens of the plaintiff community approved an amendment to the city charter at an election held November 8, 1949. It is necessary to set forth this charter amendment in full:

"(a) That the common council be authorized to discontinue the operation of the Blue Mountain General Hospital, a municipal hospital owned by the Town of Prairie City, Oregon, on or before the 1st day of January, 1951, and that upon discontinuance of said municipal hospital the common council be further authorized:

"1. To lease, sell, dispose of or liquidate any and all then existing physical plant, equipment and supplies and the whole, or any part thereof, of said municipal hospital and to discontinue and dissolve any corporate entity thereof and to pay in full any and all then existing liabilities of said municipal hospital or of the Town of Prairie City therefore; or

"2. That in the event there is formed, on or before the 1st day of July, 1950, a duly incorporated and established municipal hospital district within the boundaries of the County of Grant, State of Oregon, and the whole thereof, pursuant to Chapter 548, Oregon Laws 1949 that the common council shall then be authorized to transfer and convey to said hospital district any and all then existing physical assets of said municipal hospital in consideration of the payment by said hospital district of all then existing liabilities

against said municipal hospital being approximately $25,000.00 to $30,000.00, except the liability for the payment of the municipal hospital bonds assumed and retained by the Town of Prairie City, and to retain no physical assets of said municipal hospital or liabilities other than said liability for the payment of the interest and principal upon said municipal hospital bonds; and provided that the common council, in the event of disposal by transfer and conveyance to said hospital district as above provided, be authorized and directed to include in such conveyance the restriction that the premises therein conveyed shall be and become the property of said hospital district as long as, and only as long as, the said hospital district, grantee, therein uses said premises for a hospital and for no other purpose. That by said conveyance it is the intention of the Town of Prairie City to convey to the said hospital district a fee simple estate on the special limitation that should the said hospital district, grantee, fail or cease to use said premises for the purpose of conducting and maintaining a hospital thereon subject to the provisions of Chapter 548 Oregon Laws 1949 and amendments thereto, the estate therein conveyed shall automatically terminate and the premises therein demised shall revert to and become the property of the Town of Prairie City, Oregon.

"(b) That all parts of the Revised Charter of the Town of Prairie City, Oregon, and all ordinances and parts of ordinances of said Town in conflict with this charter amendment are hereby modified or repealed as the case may require in order that this amendment may have full force and effect."

Thereafter, the defendant district was approved by the voters of Grant county and the district organized. The city officials then offered the hospital property to the district upon the terms specified in § (a) 2 of the amendment. The precise proposal of

transfer was that the plaintiff would sell the property to the district in consideration of the district assuming the obligation to pay the operating deficit that had been incurred in maintaining the facility but that the city would retain and pay the obligation of the bonded indebtedness. In turn, the defendant was to agree to perpetuate the operation of the hospital in Prairie City as provided by § (a) 2 of the charter amendment. The district refused that offer.

Further negotiations culminated in a land sale contract between these parties dated December 29, 1950. This contract provided for the sale of the hospital property from the city to the district for $55,000. This amount represented the total indebtedness and unpaid accounts of the city with respect to the hospital. The contract contained none of the limitations or conditions specified in § (a) 2 of the charter. The purchase price was ultimately paid, and on January 17, 1956, a deed absolute conveyed the hospital to the district. The deed, like the contract, contained none of the charter restrictions.

The district continued the operation of the hospital until April 30, 1957, at a loss. The hospital was closed on that day. Lack of funds, inability to obtain credit, and the refusal of the voters of Grant county to permit the district to exceed the 6 per cent constitutional limitation, were compelling reasons for the closure. The city then brought this proceeding seeking declaratory judgment that the defendant district was compelled to maintain the hospital; that its failure to do so effected a forfeiture and the property should be returned to the city. It is contended that even though the deed did not contain the limitations imposed by the charter, that the charter provisions must be read into the deed; that the city officials responsible for the deed had no power to

execute and deliver the deed without the restrictions imposed by § (a) 2 of the charter.

The district responds by saying that the true construction of the charter amendment permits the city to make an outright sale to anyone, including the district; and, that even if the limitations apply, the district has only temporarily closed the hospital and intends to reopen it when funds permit. We may say here that the evidence in regard to an intent to reopen the hospital is in dispute. We prefer to base our determination of the case on a construction of the charter provisions. However, the similar case of *Clark v. Jones,* 173 Or 106, 144 P2d 498, is most persuasive that it requires strong evidence of an intention to permanently abandon to provoke enforcement of forfeiture conditions. It would be difficult to find such an intent from the evidence of this case.

 The rules of construction to be applied to a statute or charter provision such as this are designed to help find the legislative intent. *Moore v. Schermerhorn,* 210 Or 23, 31, 307 P2d 483, 308 P2d 180, 65 ALR 2d 715. ORS 42.230 et seq. We are cited many cases applying the various rules of construction and the result to be reached by each test. We agree with the determination of intention reached by the trial court:

"\* \* \* It is apparent that two possible methods of sale were contemplated: (1) either an outright sale of the property without limitation for a sufficient sum to pay *all* indebtedness against the hospital including construction costs, or (2) a transfer to a hospital district upon its assuming only outstanding *current* liabilities—the city to retain liability for payment of outstanding hospital bonds. If sold for the lesser amount, it was to be subject to a conditional limitation providing for continued use and operation.
\* \* \* \* \*

"* * * Plaintiff's basic premise is that a sale to a hospital district could be under section two only and could not be made under the general authority of sale granted in the first section. This contention ignores the fact that the enabling provisions are in the alternative and in different subsections of the enactment. The use of the disjunctive 'or' at the conclusion of the first subsection would permit the use of either alternative provision—the doctrine of ejusdem generis not being applicable.

"It is illogical to assert that a sale under a general authority to convey a clear title could be made to any person, firm or corporation—except a hospital district. To buttress this contention, plaintiff argues that the citizens of Prairie City sought to guard themselve against the exact situation which has resulted when the district closed the hospital. However, it is not illogical to assume that if the hospital had been sold to a private firm or corporation with the deficit which continued to mount, the owner would have closed the facilities sooner. The court cannot envision any additional assurance of continued operation coming to the citizens from a conveyance in fee to a private person or corporation."

Nothing is to be gained by repetition of the same reasoning. As we have already indicated, if we would find a different intent expressed in the charter we would be strongly persuaded that the evidence does not support a finding of perpetual abandonment. We conclude that the decree should be affirmed. Neither party shall recover costs on this appeal.