Submitted on briefs March 9, affirmed April 5, rehearing denied
April 26, 1927.

# R. N. MAGNESS v. HENRY A. KERR et al.

## (254 Pac. 1012.)

**Deeds—Grant of Fee Simple, Defeasible on Breach of Condition,
Passes All Grantor's Interest at Time of Grant, Leaving Him
Only Right to Re-enter on Breach of Condition.**

1. Grant of fee simple, defeasible on breach of condition, passes
all of interest in estate which grantor has in land at time of grant,
and leaves him without any right to land, except right to re-enter
on breach of condition.

**Deeds—Deed, Made on Condition That Premises Should Revert to
Grantors on Refund of Price, if Premises Ceased to be Used for
Co-operative Purposes, Made Continuance of Estate Limited to
Happening of Event.**

2. In deed on condition that, should premises at any time cease
to be used for co-operative purposes, they should, on refunding of
purchase price and reasonable arrangement as to improvements, re-
vert to grantors, words used were words to express limitation, and,
while estate granted was conditional one, its continuance was ex-
pressly limited to happening of event.

**Deeds—Limitation in Deed Forthwith Determined Estate Without
Any Act of Grantor on Happening of Event.**

3. Where language used in deed partook of nature of both a con-
dition and a limitation, limitation *ipso facto* determined estate with-
out any act of grantor and by operation of law on happening of
event by which it was limited.

**Deeds—Right of Grantor of Estate, Subject to Special Limitation,
is not Assignable.**

4. Right of grantor of an estate, subject to a special limitation,
is, until event happens which terminates estate, mere naked pos-
sibility of reverter, and, in absence of statute, right is not assign-
able, since it is neither an estate nor an interest in lands.

**Deeds—Attempted Conveyance by Grantor of Possibility of Reverter
Did not Destroy Right, Where Grantee's Estate had Been De-
termined by Failure to Use Property for Uses Specified in
Limitation.**

5. Attempted conveyance by grantor of his possibility of re-
verter did not operate to destroy his right and vest an indefeasible
estate in his first grantee, where the grantee's estate had been de-
termined by its failure to use property for uses specified, in words of
limitation.

1. Effect of conditions subsequent, see note in 102 Am. St. Rep.
367. See, also, 8 R. C. L. 1099.

3. See 8 R. C. L. 1100.

Estoppel—Grantee of Defeasible Estate, not Party to Transaction, and Who had not Changed Position Because of Conveyances by Grantors, Could not Claim Estoppel.

6.  Grantee of estate, defeasible on condition, not a party to transaction or in privity to anyone who was, and who had not changed his position by reason of conveyances of grantors, could not claim that they were estopped to claim property as against grantee because they had conveyed property to another, and subsequently taken advantage of Bankrupt Act (U. S. Comp. Stats., § 9585 et seq.), and later regained property.

Fraud—Fraud cannot be Presumed.

7.  In absence of some facts constituting fraud, it cannot be presumed.

Equity—On Determination of Estate by Operation of Law, Equity cannot Set Aside Forfeiture Caused by Vendee's Failure to Comply With Limitation.

8.  On determination of estate by operation of law, court of equity has no power to set aside forfeiture caused by vendee's failure to comply with requirements of limitation contained in deed.

Deeds—That There was No One to Whom Reversioners Could Repay Consideration for Deed When Estate was Determined Could not Defeat Reversioner's Right to Property.

9.  That court was powerless to decree repayment of consideration in accordance with terms of deed, since grantee corporation no longer existed, was not sufficient to defeat termination of estate, subject to special limitation, on happening of event, nor of reversioner's right to enjoyment of property.

---

Deeds, 18 C. J., p. 301, n. 92, 93, 94, 98, p. 302, n. 99, p. 336, n. 62, p. 352, n. 69, p. 361, n. 68, p. 364, n. 12, 13, 15, p. 371, n. 11, 12, p. 373, n. 26, p. 375, n. 69, 70, 75.
Equity, 21 C. J., p. 196, n. 59.
Estoppel, 21 C. J., p. 1205, n. 30.

From Benton: G. F. SKIPWORTH, Judge.

In Banc.

AFFIRMED.        REHEARING DENIED.

For appellant there was a brief over the name of *Mr. Frank Holmes.*

For respondent there was a brief over the names of *Mr. L. E. Lange* and *Mr. Earl A. Nott.*

---

7.  See 12 R. C. L. 424.

RAND, J.—This is a suit in equity to quiet title to
a small tract of land consisting of 1.44 acres which
on May 31, 1918, was sold and conveyed by defend-
ants to the Equity Queen Canning Company, a cor-
poration by deed containing the following provision,
to wit: "Provided and this deed is made upon this
condition, that should said premises at any time cease
to be used for co-operative purposes, they shall, upon
the refunding of the purchase price and reasonable
and equitable arrangement as to the disposition of
the improvements, revert to said grantors." The
consideration recited in the deed was the sum of $100
which was paid by the issuance and delivery to de-
fendants of capital stock of the corporation of the
par value of $144. After obtaining said deed, the
corporation entered into possession of the premises,
erected a cannery thereon and operated the same for
a short period and then became insolvent and has
since been dissolved. The premises in question were
sold at an execution sale made pursuant to a decree
foreclosing a mortgage which has been given by said
corporation to the bank of Dayton and plaintiff was
the purchaser at such sale and has received a sheriff's
deed therefor. Plaintiff brought this suit to quiet
title to said premises.

The defendants answered alleging as a defense to
the suit that the premises were not used and never
had been used for co-operative purposes and that by
reason thereof the condition contained in the deed had
been breached, and that the estate granted as limited
by the deed had determined, and that the property de-
scribed in the deed had reverted to and was the ab-
solute property of the defendants, and by their answer
they offered to pay whomsoever should be entitled to

receive the same the amount of the consideration paid as the consideration for the deed, and also whatever sum the court should find to be the value of the improvements which had been placed thereon by the corporation and plaintiff, and at the trial expressly consented to the removal by plaintiff of all of the improvements thereon.

The case was tried upon an agreed statement of facts with some additional testimony upon the part of the defendants. All of the material facts appear from the stipulation. As so stipulated it appears that prior to the execution of the deed to the corporation, the premises in question had been used by plaintiff in conjunction with the defendants and others for the operation of a co-operative cannery and that in incorporating the corporation both plaintiff and the defendant H. A. Kerr were corporators and that upon its organization plaintiff became president and a director thereof, and that from March 5, 1918, until on or about July 30, 1918, said defendant Kerr was also one of the directors and the secretary of said corporation, and that while he was one of the directors and secretary, the corporation borrowed from the bank of Dayton the sum of money for which the mortgage was given.

It is so stipulated that on May 31, 1921, the defendants executed and delivered to J. A. Hewitt and M. J. Hewitt, a deed conveying their reversionary interest in said premises, and that on February 1, 1926, the said Mary J. Hewitt, her husband J. A. Hewitt having died, reconveyed the same to the defendants.

It is also stipulated that on October 3, 1923, the defendant Henry A. Kerr on his own petition, was adjudicated a bankrupt, and on November 19, 1924,

was duly discharged in bankruptcy and that in the bankruptcy proceedings he made no mention in any way of any interest or estate in the premises in question. No objection is raised as to the validity of the decree or as to the regularity of the proceedings under which the sale was made to plaintiff. It was also stipulated that no tender of any sum of money by defendants has ever been made either to plaintiff or to the corporation in repayment of the consideration received by the defendants for their deed to the corporation, but the answer contained the offer to which we have referred.

The court found that the sole consideration paid by the corporation for said deed was the issuance and delivery to plaintiff of capital stock of the corporation of the par value of $144 and that this stock has no value. The court also found that the premises had not been used by the corporation or by plaintiff for any co-operative purpose and that because of the limitation contained in the deed, the property had reverted to defendants, and that the defendants and not plaintiff are the owners thereof, and entered a decree accordingly giving to plaintiff the right to remove all of the improvements from said premises.

It is plaintiff's contention that the clause contained in defendants' deed to the corporation to which we have referred, constitutes nothing more than a mere condition subsequent and that under the doctrine announced in *School District* v. *Wallowa County*, 71 Or. 337 (142 Pac. 320), and *Wagner* v. *Wallowa County*, 76 Or. 453 (148 Pac. 1140, L. R. A. 1916F, 303), the transfer by defendants to the Hewitts of their supposed interest in the premises, resulted in the defeat and destruction of the condition and vested the absolute ownership of the premises in plaintiff; while de-

fendants contend that the words used in the deed created not only a condition but a limitation, and for that reason the case does not come within the rule followed in either of the cases cited.

In those cases the same grantors had first conveyed certain real property to Wallowa County subject to a condition expressed in the deed which was that the property so conveyed to the county should be used as "a site or part of a site for a county high school and buildings connected therewith, and for no other purpose and if not so used for such purpose, the title shall revert to the grantors herein." Following the conveyance, the county established a county high school upon the property, but just before a local initiative measure to abolish the county high school was to be voted upon by the people of the county the grantors in anticipation of the abolishment of the county high school, which in fact was abolished at said election, gave another deed conveying the same property to School District No. 21 with a like condition limiting the use under the second deed to a district high school.

In the case first cited the school district sought, by an action in ejectment, to recover the property from the county and upon appeal from a judgment in favor of the, county it was in effect held, that the action could not be maintained by the district for breach of the condition by the county, because the right of a conditional grantor before breach and re-entry was not assignable. In the last case cited the conditional grantors themselves, by an action in ejectment, sought to recover the premises from the county because of the county's breach of the condition contained in the deed, and it was in effect held that the grantor's right to enter for breach of a condition not

being assignable, a deed purporting to convey such right was not only a nullity but that an attempted conveyance of the right constitutes a waiver of the condition contained in the deed, and results not only in defeating the condition itself, but also in determining the grantor's possibility of a reverter. In both cases the language of the deed to the county was held to create a mere condition subsequent and not a limitation, and consequently what was said in the decisions of those cases, must be considered in the light of that fact.

1. The grant of a fee simple, defeasible on breach of condition, passes all of the interest and estate which the grantor has in the land at the time of the grant and leaves him without any right to the land except the right to re-enter on breach of the condition. This right is nothing more than a mere naked possibility of reverter. It is a right not coupled with an interest, and has been said to be ''no more of an estate or interest in the land than the possibility of its reconveyance to him.'' It was a right not assignable at common law, either before or after breach of condition, and since there is no statute in this state authorizing its assignment, it is not assignable in this jurisdiction. In *Seec* v. *Jakel*, 71 Or. 35 (141 Pac. 211, L. R. A. 1916A, 679), it was held that the commencement of an action by the grantor or his heir to recover possession for breach of condition, is equivalent to and takes the place of re-entry and terminates the estate without re-entry by the grantor or his heir. In an estate on condition, the performance of the condition inures to the benefit of the grantor and his heirs only, and they may waive or enforce performance at their election and unless there is a re-entry or claim by the grantor or his heirs, the estate

continues to exist the same as if the condition had been complied with. But where the estate is expressly limited to the happening of an event which determines it upon the happening of that event, it is *ipso facto* determined by operation of law without the doing of any act by any person whomsoever, and in such case re-entry or claim is not essential to its termination.

The distinction between an estate upon condition and an estate with a limitation annexed is clearly recognized by courts and text-writers, and the difference between the two is illustrated in 2 Wash. on Real Property (5 ed.), * 458 as follows:

"A grant to A. B., provided she continues unmarried, is an estate upon condition; and if she marries, nobody can take advantage of it to defeat the estate but the grantor or his heirs. But a grant to A. B., so long as she continues unmarried, is a limitation. The moment she marries, the time for which the estate was to be held has expired, and the estate is not technically defeated, but determined."

2, 3. This, or a similar example, is used to illustrate the difference between the two by other text-writers, and from these examples it is obvious that the words used in the deed involved here, are words of express limitation, and that while the estate granted was a conditional one, its continuance was expressly limited to the happening of the event upon which its existence was made to depend. While the language used in this deed partakes of the nature of both a condition and a limitation, the limitation *ipso facto* determined the estate without any act of the grantor and by operation of law upon the happening of the event by which it was limited.

Under our statute, Section 9844, Or. L., convey-
ances of lands or of any estate or interest therein
may be made by deed, but the statute contains no
definition of what shall constitute an estate or interest
in lands and therefore we must look to the common
law to determine what estate or interest in land may
be made the subject of conveyance in this state.

According to Professor Gray in his rule against
perpetuities (3 ed.), Section 31: "The distinction be-
tween a right of entry for condition broken and a
possibility of reverter is this: After the Statute, a
feoffor, by the feoffment, substituted to the feoffee
for himself as his lord's tenant. By entry for breach
of condition, he avoided the substitution, and placed
himself in the same position to the lord which he had
formerly occupied. The right to enter was not a
reversionary right coming into effect on the termina-
tion of an estate, but was the right to substitute the
estate of the grantor for the estate of the grantee.
A possibility of reverter, on the other hand, did not
work the substitution of one estate for another, but
was essentially a reversionary interest,—a returning
of the land to the lord of whom it was held, because
the tenant's estate had determined." In this and in
the preceding section he says that interests arising
on condition broken were not affected by the statute
of *quia emptores,* but that since the statute, there can
be no fee with a special or collateral limitation; and
the attempted imposition of such a limitation is in-
valid. In Section 13 the author says:

"Some estates were terminable by special or col-
lateral limitations; for instance, an estate to A. till
B. returned from Rome; or an estate to A. and his
heirs until they ceased to be tenants of the Manor of
Dale. On the happening of the contingency, the

feoffor was in of his old estate without entry. The estate was not cut short, as it would have been by entry for breach of condition, but expired by the terms of its original limitation. After a life estate of this kind a remainder could be limited. After such a fee it has commonly been supposed that there could be no remainder; but there was a so-called possibility of reverter to the feoffor and his heirs which was not alienable.''

4, 5. Professor Gray's statement that there can be no fee with a special or collateral limitation and that the attempted imposition of such a limitation is invalid does not seem to be the rule which has generally been adopted in this country. See Tiffany on the Modern Law of Real Property, pages 188–195, where he discusses estates on special limitation, and the distinction between such an estate and an estate on condition. He says (Section 81) that ''when land is granted for certain purposes, as for a schoolhouse, a church, a public building, or the like, and it is evidently the grantor's intention that it shall be used for such purpose only, and that on the cessation of such use, the estate shall end, without any re-entry by the grantor, an estate of the kind now under consideration (determinable, base, or qualified fees) is created. It is necessary, it is said, that the event named as terminating the estate be such that it may by possibility never happen at all, since it is an essential characteristic of a fee that it may possibly endure forever.'' He then states that it is denied by a number of writers of the highest authority that such an estate can on principle exist since the passage of the statute of *quia emptores,* but that the existence of such an estate has, however, been assumed by the great majority of the earlier writers on real property and in this country its existence has been recognized

in a considerable number of decisions. He also states
that: "The right in the grantor to the possession of
the land upon the happening of a contingency is a mere
possibility and is termed a 'possibility of reverter.'
A mere possibility such as this would seem, on prin-
ciple, not to be assignable." Hence, whichever view
may be taken the right of a grantor of an estate sub-
ject to a special limitation is until the event happens
which terminates the estate, a mere naked possibility
of reverter and in the absence of a statute, the right
is not assignable, since it is neither an estate nor an
interest in lands. But however that may be, the rule
applied in the Wallowa County cases that an at-
tempted conveyance by the grantor of his possibility
of reverter, operates to destroy his right and vest an
indefeasible estate in his first grantee, ought not to
be applied in this case. First, the rule is a harsh one
and produces a result not contemplated by the parties
to the transaction, and therefore ought not to be ap-
plied unless required by some positive rule of law;
secondly, in this case under the admitted facts in the
case, the estate granted to the Equity Queen Canning
Company had been determined by its failure to use
the property for co-operative purposes, which was
the contingency by which the estate was to be di-
vested, and since by the happening of such a contin-
gency the estate had been determined and the prop-
erty had reverted, it was subject to conveyance by
the defendants and upon its reconveyance to them
they owned the whole estate in the land.

6, 7. It is contended that defendants conveyance of
the property to the Hewitts and subsequent taking
advantage of the bankrupt act and the regaining the
property ought to estop them from now asserting title
to the property as against plaintiff. There are no

facts stipulated or proved showing that these conveyances were made fraudulently. So far as the record shows, a full and adequate consideration may have been paid for each transfer. In the absence of some showing of facts constituting fraud, it cannot be presumed. Nor is plaintiff entitled to claim an estoppel. He did not change his position by reason of these conveyances, nor is he any worse off than he would have been if the conveyances had not been made. He was not a party to the transaction, or in privity to anyone who was, and as stated there is nothing to show that defendants in seeking equitable relief did not come into court with clean hands.

8. The fact that this is a suit in equity places plaintiff in no better position than if it were an action at law, for upon the determination of the estate by operation of law, a court of equity has no power to set aside the forfeiture caused by the vendee's failure to comply with the requirements of the limitation contained in the deed.

9. The decree of the lower court provided that plaintiff should be entitled to take away all of the improvements which had been placed on the premises by plaintiff and his predecessor in interest. Since the corporation which paid by its stock the consideration for its deed no longer has any corporate existence, there is no one to whom the defendants can repay the consideration for which the deed was given, and if there are any creditors of the corporation, the record fails to show it and if so they are not made parties to the suit. The court, therefore, was powerless to decree the repayment of the consideration for which the deed to the corporation was given. This fact is not sufficient, we think, to defeat the termina-

tion of the estate or defendants' right to the enjoyment of the property.

Finding no error in the record the decree appealed from must be affirmed.

AFFIRMED.   REHEARING DENIED.

Justice BELT did not participate in this decision.