## STATE ex rel DEPARTMENT OF
## TRANSPORTATION, *Appellant,*
*v.*
## TOLKE, *Respondent.*
## (No. 36-648, CA 9262)

586 P2d 791

Mary Deits, Assistant Attorney General, Salem, argued the cause for appellant. On the briefs were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and James C. Rhodes, Assistant Attorney General, Salem.

David G. Frost, Hillsboro, argued the cause for respondent. With him on the brief were Albert T. Kemmer, Beaverton, and Frost & Hall, Hillsboro.

Before Schwab, Chief Judge, and Thornton, Tanzer and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

■ Plaintiff Department of Transportation (State) appeals from a decree of the circuit court quieting title to certain real property in the defendant and his wife. This proceeding commenced as an action by the State for damages for trespass against defendant, in which the State alleged ownership in fee simple of described real property. Defendant filed an answer denying the State's ownership of the land in question, and by way of a countersuit defendant claimed that he and his wife owned the land in question, and prayed that title be quieted in them. The trial court proceeded to try the case as a suit to quiet title, apparently pursuant to ORS 16.460(2).[1] No error is assigned to the procedure followed, to the pleadings, or to the nonjoinder of parties. For purposes of this appeal, however, we treat the sole issue as being whether the State owns the real property described in the complaint.[2]

In 1919, A. L. Stephens and Ella S. Stephens owned a parcel of real property which was farmed by them as a unit. That year, the Portland, Astoria and Pacific Railroad Company (Railroad) sought to acquire a strip of land across the Stephenses' farm as a right-of-way

---

[1] ORS 16.460(2) provides in part:

"* * * When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed, until the determination of the issues thus raised, as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. * * *"

*But see Corvallis Sand & Gravel v. Land Board,* 250 Or 319, 439 P2d 575 (1968).

[2] *See Denham et ux v. Cuddeback,* 210 Or 485, 311 P2d 1014 (1957), in which the Supreme Court held that in a trespass action the title of plaintiff may be determined where defendant has put title in issue by a general denial.

In the case at bar, the record indicates that defendant and his wife are the record owners of the property, and also indicates that the persons who signed the deed to the plaintiff are not exactly the same persons shown as the heirs of Mr. Stephens in his probate file. It does not appear, therefore, that all persons who have or may have an interest in the property are parties to this proceeding, so a decree quieting title in defendant is not appropriate.

for its tracks. Having failed to negotiate successfully for the acquisition, the Railroad commenced proceedings to take the strip of land by condemnation, and thereafter the action was settled by the Stephenses' executing a warranty deed on February 25, 1920, conveying the strip to the Railroad. That deed[3] contained the following language:

"* * * so long as said property herein granted shall be possessed, used and occupied as a railroad right of way and be used and occupied for the purposes of construction, maintenance and operation thereon and thereover, railroads and railroad trains, and the above named grantors do hereby covenant to and with the above named grantee, its successors in interest and

[3] In its entirety, the deed read:

"KNOW ALL MEN BY THESE PRESENTS: that A. L. Stephens and Ella Stephens, his wife, of the County of Washington, State of Oregon, in consideration of the sum of one thousand ninety-eight and 60/100 ($1098.60) dollars, and other good and valuable considerations, as evidenced by a certain agreement in writing made and entered into by and between the parties hereto and of even date herewith, to A. L. Stephens paid by the Portland, Astoria & Pacific Railroad Company, a corporation, organized, existing and doing business under and by virtue of and in pursuance to the laws of the State of Delaware, and duly licensed to do business in the State of Oregon, have bargained and sold and by these presents do hereby grant, bargain, sell and convey unto the said Portland, Astoria & Pacific Railroad Company, a corporation, its successors in interest and assigns, all the following bounded and described real property, lying, being and situate within Washington County, Oregon, and being more particularly bounded and described as follows, to-wit:

"[Description omitted.]

"Together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, including all our right, title and interest in and to the same, except as hereinafter set forth.

"TO HAVE AND TO HOLD the above described and granted premises unto the said Portland, Astoria & Pacific Railroad Company, a corporation, its successors in interest and assigns, so long as said property herein granted shall be possessed, used and occupied as a railroad right of way and be used and occupied for the purposes of construction, maintenance and operation thereon and thereover, railroads and railroad trains, and the above named grantors do hereby covenant to and with the above named grantee, its successors in interest and assigns, that they are lawfully seized in fee simple of the above granted premises and that they are free and clear of all liens and incumbrances and that they will and their heirs, executors and

assigns, that they are lawfully seized in fee simple of the above granted premises and that they are free and clear of all liens and incumbrances and that they will and their heirs, executors and administrators, shall warrant and forever defend the above granted premises and every part and parcel thereof against the lawful claims and demands of all persons whomsoever. Except and provided however, that in the event of and whenever the said land hereinabove described shall be abandoned as a railroad right of way and shall cease to be used as such, and the operation of the trains thereover shall cease, then, and in that event, this conveyance shall thereupon become null and void and the right, title and interest in the land hereby conveyed shall immediately revert to and reinvest in the grantors above named, their heirs, executors, administrators or assigns, and all rights hereby conveyed by or received from the grantors hereunder shall at said time utterly cease and terminate."

On March 23, 1920, another document was executed, and subsequently recorded, which provided that in further consideration of the conveyance by the Stephenses to the Railroad, the Railroad would construct grade earth farm crossings across the strip of land and undertake the construction and operation of the Railroad right of way so as not to interfere with farming activities.

In 1937, the Stephenses conveyed their farm to C. P. and Elva Tolke, parents of the defendant herein. The deed conveyed the entire farm, "* * * [e]xcepting therefrom that certain tract of land described in Deed

administrators, shall warrant and forever defend the above granted premises and every part and parcel thereof against the lawful claims and demands of all persons whomsoever. Except and provided however, that in the event of and whenever the said land hereinabove described shall be abandoned as a railroad right of way and shall cease to be used as such, and the operation of the trains thereover shall cease, then, and in that event, this conveyance shall thereupon become null and void and the right, title and interest in the land hereby conveyed shall immediately revert to and reinvest in the grantors above named, their heirs, executors, administrators or assigns, and all rights hereby conveyed by or received from the grantors hereunder shall at said time utterly cease and terminate."

Book 118, page 29, records of deeds, Washington County, Oregon." The reference is to the deed conveying the strip of land to the Railroad.

In 1956 defendant and his brother acquired an undivided ½ interest in the farm from their mother, then a widow, and in 1975 title to the entire farm was conveyed by warranty deed to defendant and his wife.

Subsequent to the acquisition of the strip of land, the Railroad merged with and became a part of the Spokane, Portland and Seattle Railroad and the Burlington-Northern (SPS Railroad). SPS Railroad, in 1974, ceased to use the property as a Railroad right-of-way, and on October 2, 1974, quitclaimed whatever interest it had in the strip to Orth Industries, a California salvage company. Orth Industries removed the rails and ties from the disputed property, and in August, 1975, quitclaimed whatever interest it had in the property to defendant. In September, 1975, however, the State obtained a bargain and sale deed[4] from the purported heirs of the original grantors, the Stephenses.

The State contends it owns the strip of land because the original conveyance from the Stephenses to the Railroad conveyed a fee simple determinable (subject to special limitation) with a possibility of reverter in the grantors and their heirs, which vested in possession in the grantor's heirs when the Railroad abandoned the use of the strip as a right-of-way. Defendant, on the other hand, contends primarily that deed created only an easement over and across the farm, which was extinguished when the Railroad abandoned its use of the strip; he further contends that the deed from the Stephenses to defendant's parents must be construed as being "subject to" the rights of the Railroad rather than as excepting the strip of land from the conveyance. The trial court agreed with defendant.

---

[4]The deed to the State recited a consideration of $1,000.

# I

## THE DEED TO THE RAILROAD

■ It is apparent from a close reading of the deed from the Stephenses to the Railroad that it was very carefully and thoughtfully prepared with the express intention of creating a fee simple determinable. As we said in *City of Klamath Falls v. Flitcraft,* 7 Or App 330, 334, 490 P2d 515 (1971), *rev den* (1972):

> "We conclude that the estate that passed to the city under this deed was a fee simple on a special limitation, which is also known as a fee simple determinable, or a base or qualified fee.
>
> "The 'magic' words 'so long as' have generally been held to create such an estate. Simes and Smith, The Law of Future Interests 345, § 287 (2d ed 1956), states:
>
> > " '* * * The words of duration "so long as" will almost certainly be judicially recognized as the distinctive insignia of such an estate, and, if coupled with a provision which clearly calls for an automatic termination of the estate granted, there is little room for construction. * * *' "

Not only does the deed employ the so-called "magic" words "so long as" in the habendum clause, but the warranty provisions, after the usual general warranty language, add:

> "Except and provided however, that in the event of and whenever the said land hereinabove described shall be abandoned as a railroad right of way and shall cease to be used as such, and the operation of the trains thereover shall cease, then, and in that event, this conveyance shall thereupon become null and void and the right, title and interest in the land hereby conveyed shall immediately revert to and reinvest in the grantors above named, their heirs, executors, administrators or assigns, and all rights hereby conveyed by or received from the grantors hereunder shall at said time utterly cease and terminate."

*See* O'Connell, *Estates on Condition Subsequent and Estates on Special Limitation in Oregon,* 18 Or L Rev 63, 73 (1939), where the author states that *any*

language in the instrument indicating an intent that the estate automatically ends upon the occurrence of a specified event is sufficient to create an estate on a special limitation (fee simple determinable).

Here the deed used both the phrase "so long as" and clearly and expressly provided that the estate shall terminate and the title to the land conveyed "shall immediately revert to" the grantors, etc. Defendant relies on a constructional preference leaning toward the grant of an easement with respect to railroad deeds, citing *Bernard et ux. v. Link and Haynes,* 199 Or 579, 248 P2d 341, 263 P2d 794 (1953). In this case, however, we see no room for construction: the deed is a classic example of the creation of a fee simple determinable.

Defendant also contends that the document executed approximately one month after the deed in question supports his position because it refers to the conveyance as a "right-of-way deed" in several places. He points out that the Supreme Court, in *Cappelli v. Justice,* 262 Or 120, 128, 496 P2d 209 (1972), stated that "[i]n common parlance the term 'right of way' signifies an easement." It is also true, however, that the term has a generic meaning: an area or strip where a railroad operates its trains. Black's Law Dictionary, 4th Ed (1968). The Court in *Cappelli* went on to state: "In the absence of special circumstances indicating a contrary meaning, the courts have generally construed the term in accordance with common usage. [Footnote omitted.]" 262 Or at 128-29. Here there was clearly a special circumstance: the carefully drawn deed to which reference was made in the agreement and which used the term "right-of-way" in its generic sense in providing that "in the event * * * said land * * * shall be abandoned as a railroad right of way."

We hold that the deed to the Railroad created a fee simple determinable estate in the Railroad.

[ 758 ]

## II
## 1937 DEED FROM STEPHENSES TO DEFENDANT'S PARENTS

Having determined that the Stephenses, as grantors, retained a possibility of reverter in the strip of land, it remains to be determined the effect of their subsequent conveyance to defendant's parents, his predecessors in interest.

The 1937 deed conveyed from the Stephenses to the Tolkes (defendant's parents) "all the following bounded and described property, situated in the County of Washington, State of Oregon, (description of entire farm, omitted) containing 79 acres, more or less, excepting therefrom that certain tract of land described in Deed Book 118, page 29, records of deeds of Washington County, Oregon." The latter reference is to the 1920 deed to the Railroad relating to the strip of land here in controversy.

Ordinarily, the purpose of an exception "is to take something out of the thing granted that would otherwise pass by the deed." *Rall et ux. v. Purcell et ux.,* 131 Or 19, 21, 281 P 832 (1929). The question here is what did the grantors intend to except from the conveyance? That question may be answered best by considering the purpose of the exception in the context of the 1937 deed. The Railroad deed, the subject of the exception and incorporated by reference in the 1937 deed, conveyed a narrow strip running through the farm conveyed by the 1937 deed, and retained a possibility of reverter in the Stephenses. Because the 1937 deed was a general warranty deed, it was necessary to exclude from the warranty the rights of the Railroad under the earlier deed, but nothing more. The only circumstance in which it would make sense to construe the deed as excluding any interest in that strip from the conveyance would be where the Railroad had acquired title in fee simple absolute to the strip by virtue of the Railroad deed; in that event, the grantors would have had nothing to transfer and the purpose of

the exception would be to exclude fee simple title to the strip from the conveyance. But that was not the case here.

It could also be argued, however, that the grantors intended to reserve to themselves the remote contingency that the possibility of reverter would occur, thereby revesting title to the strip in themselves or their heirs. There is nothing in the 1937 deed, however, to suggest that the grantors were reserving *any* interest in themselves, much less a remote interest which, if it became vested in possession, would make them or their heirs the owners of a narrow strip running through the farm conveyed. In the absence of a clearly expressed intent to reserve an interest in themselves, it seems far more likely that their only concern was to exclude the rights of the Railroad from their general warranty of title.

Accordingly, whatever was intended by the 1937 deed it is not clearly expressed by its language; either it meant "except for the rights of the Railroad under the deed" referred to, or it meant that in addition, the grantors were reserving to themselves the possibility of reverter under the Railroad deed. We must decide which meaning was intended.

■ In resolving this problem, we are aided by a constructional preference in favor of the grantee. In *Hurd v. Byrnes,* 264 Or 591, 598, 506 P2d 686 (1973), the Supreme Court said:

> "* * * Where narrow strips of land have been the subject of dispute in construing various conveyances, we have held that there should be a constructional preference in favor of the grantee. We have pointed to a number of considerations which warrant this preference. We have taken the view that where the conveyance or reservation of title to narrow strips of land is in question, the probable intent of the grantor is not to retain title if he does not own abutting land. Our previous cases recognizing this principle have involved conveyances bordering on a street or stream. We have assumed that in the absence of an express provision to the contrary the grantor, in conveying land described as bordering a

street or stream, ordinarily intends to also convey his title to the street portion of the lot or to the bed of the stream. This rule of construction is also founded on policy considerations, including the prevention of vexatious litigation and the prevention of the existence of strips of land the title to which would otherwise remain in abeyance for long periods of time. [Footnote omitted.] Supporting this conclusion is the general rule that ambiguities in a deed are to be construed against the grantor. [Footnote omitted.]"

■ In this case, the Stephenses conveyed their entire farm, and there is no evidence that they owned any other property abutting the strip, and since there is no express provision reserving any rights therein to the grantors, the probable intent of the grantor was not to retain any interest in the narrow strip. The most logical construction of the language is that it was intended to exclude from the conveyance, and thus from the grantors' warranty, the rights of the Railroad under the earlier deed.[5]

Accordingly, we hold that the 1937 deed conveyed the entire farm then owned by the Stephenses to defendant's predecessors, excepting therefrom the rights of the Railroad under the 1920 deed to occupy the narrow strip as a right-of-way, and did not reserve any interest therein to the grantors. As a result, the deed transferred whatever rights the Stephenses had in the strip to the grantees. The question remains as to whether they had the right to do so.

III

ALIENABILITY OF POSSIBILITY OF REVERTER

Discussion of the question as to whether a possibility of reverter may be transferred is clouded by *dicta* in

---

[5]If we needed to resort to extrinsic evidence, the record here supports our conclusion. A surviving grantee under the 1937 deed said she was told by the Stephenses that if and when the Railroad abandoned its use of the right-of-way, the strip would belong to the grantees. The fact that the Stephenses did not intend to retain any interest in the narrow strip, and didn't think they had done so, is further evidenced by the omission of any mention of that interest in the inventory filed in the probate proceedings of Mr. Stephens.

two early Oregon cases, *Wagner v. Wallowa County,* 76 Or 453, 148 P 1140 (1915), and *Magness v. Kerr et al,* 121 Or 373, 254 P 1012 (1927). *Wagner* involved a fee simple subject to a condition subsequent which the Court had held to be nontransferrable until the grantor actually regained possession by reentry after breach of the condition. *School Dist. No. 21 v. Wallowa Co.,* 71 Or 337, 142 P 320 (1914). The question in *Wagner* was whether the original grantor's attempt to transfer the right of reentry destroyed that right, and the Court held that it did.

In arriving at that result, the Court discussed in detail the differences between an estate subject to a condition subsequent and an estate subject to a special limitation. It pointed out that with respect to the former, the grantor has conveyed his entire estate leaving him with "no estate whatever, but only a chose in action which is personal to himself and cannot be granted to another." (76 Or at 464.) The Court went on to assume, without deciding, that there had been a breach of the condition, and that the attempted transfer of the right of reentry destroyed it. The grantee acquired a fee simple absolute because the attempted alienation amounted to a renunciation by the grantor of his potential future right to reenter for condition broken. On the other hand, the grantor of an estate subject to a special limitation has conveyed less than his entire estate, and the estate so granted "contains within itself the elements of its own dissolution, so that it returns spontaneously to the grantor upon the happening of the event." (76 Or at 464.)

Based upon the Court's discussion in *Wagner,* then, the key distinction between the two estates appears to be that the grantor of an estate on a condition subsequent retains no estate in the land conveyed, but only a chose in action, whereas the grantor of an estate on a conditional limitation does retain an estate in the land conveyed. *Wagner* holds only that an attempt to convey a right of reentry destroys it.

In *Magness v. Kerr, supra,* the Court *held* that after the happening of the contingency by which the estate on a conditional limitation reverted to the grantor, the grantor could convey it. While the opinion contains, by way of *dicta,* a discussion of the two estates discussed in *Wagner,* and the differences between them, the discussion is confusing because it concludes with the following statement which seems to indicate that there are no differences between the two types of estates which was recognized earlier in that opinion as well as in *Wagner:*

> "* * * Hence, whichever view may be taken the right of a grantor of an estate subject to a special limitation is until the event happens which terminates the estate, a mere naked possibility of reverter and in the absence of a statute, the right is not assignable, since it is neither an estate nor an interest in lands. But however that may be, the rule applied in the Wallowa County cases that an attempted conveyance by the grantor of his possibility of reverter, operates to destroy his right and vest an indefeasible estate in his first grantee, ought not to be applied in this case. First, the rule is a harsh one and produces a result not contemplated by the parties to the transaction, and therefore ought not to be applied unless required by some positive rule of law; secondly, in this case under the admitted facts in the case, the estate granted to the Equity Queen Canning Company had been determined by its failure to use the property for co-operative purposes, which was the contingency by which the estate was to be divested, and since by the happening of such a contingency the estate had been determined and the property had reverted, it was subject to conveyance by the defendants and upon its reconveyance to them they owned the whole estate in the land."

As a result of that apparent confusion,[6] the Court assumed that its holding in *Wagner* was applicable to the deed in dispute, but was avoided because the

---

[6] "What the law is in Oregon today is left in doubt by the case of *Magness v. Kerr.*" O'Connell, *Estates on Condition Subsequent and Estates on Special Limitation in Oregon,* 18 Or L Rev 63, 85 (1939).

grantee's estate had automatically reverted to the grantor, who thereafter conveyed it.

◼ Accordingly, prior to this Court's decision in *City of Klamath Falls v. Flitcraft, supra,* the state of the law in Oregon was that a right of reentry incident to an estate on a condition subsequent was inalienable, and an attempt by the original grantor to alienate his right of reentry destroyed it; however, the grantor of an estate on a conditional limitation could convey his estate after the contingency occurred which caused an automatic reverter to him. In *City of Klamath Falls,* we were confronted with a deed which we held created an estate on a conditional limitation, with an executory interest in others than the grantors. We further held that the executory interest was void under the rule against perpetuities,[7] and were then confronted with the question of whether the attempted alienation of the possibility of reverter destroyed it. In discussing that issue, we stated that this state was one of a small minority of states that holds that a possibility of reverter cannot be alienated, citing *Magness.* We went on to point out that no Oregon case has held that an attempt to alienate a possibility of reverter destroys it, and that the language of the Court in *Magness* criticizing the holding in *Wagner* was *dictum.* We held

---

[7]While the rule against perpetuities applies to executory interests (*Agan et al v. U. S. National Bank,* 227 Or 619, 363 P2d 765 (1961); *City of Klamath Falls v. Flitcraft,* 7 Or App 330, 334, 490 P2d 515 (1971), *rev den* (1972)), it is well settled that it does not apply to possibilities of reverter. Gray, The Rule Against Perpetuities 46, 348, 349, § 41, 313, 314 (4th ed 1942). While this anomaly has been criticized as contrary to the policy of the rule because it permits long-outstanding "contingent" interests, O'Connell, *Estates on Condition Subsequent and Estates on Special Limitation in Oregon,* 18 Or L Rev 63, 79 (1939), argues that it is preferable to make such rights expressly subject to the rule against perpetuities rather than accomplish the same result by restricting their alienation. *See City of Klamath Falls v. Flitcraft, supra,* note 3.

The Oregon legislature has taken the suggestion by setting a 30-year maximum period within which the contingency must occur. (Oregon Laws 1977, ch 23, § 1; codified as ORS 105.770-105.774.) Although the new legislation is inapplicable to the deed to the Railroad here involved, it does indicate that the legislature addressed the problem by limiting the duration of the contingency rather than by restricting alienation.

that the attempt by the grantor to transfer his possibility of reverter did not destroy it.

We did not hold in *City of Klamath Falls v. Flitcraft, supra,* that a possibility of reverter cannot be alienated. We held that an attempt to do so by an executory limitation was void under the rule against perpetuities and that notwithstanding that void attempt, the possibility of reverter remained viable in the grantor. The language in *Magness* to which we referred in support of our *dictum* (which is part of the language quoted above) that a possibility of reverter cannot be alienated, was also *dictum.* In *City of Klamath Falls* we did not follow the *dictum* of *Magness* that an attempt to alienate a possibility of reverter destroys it, and we do not now follow the *Magness dictum* with respect to inalienability.

■ In fact, in order to decide *City of Klamath Falls* as we did, we had to decide that a possibility of reverter was descendable to the heirs at law of the shareholders of the dissolved corporate grantor, that is, that the grantor had retained an interest in land. Our conclusion was consistent with the *dictum* in *Wagner* but not consistent with the *Magness dictum* that the right was "a mere naked possibility of reverter" and was "neither an estate nor an interest in lands." (121 Or at 383). We pointed out that the weight of authority supported the descendability of such interests and that we could discern no public policy against such a conclusion.

It is also true that the weight of authority supports the alienability of a possibility of reverter, 2 Restatement of Property, § 159 (1936); Simes and Smith, The Law of Future Interests, § 1860 (2nd Ed., 1956). *Cf.* O'Connell, Estate as Condition Subsequent and Estates on Special Limitation in Oregon, *supra,* and we see no reason based on public policy to reach a different conclusion. The most that can be said is that even though the language in *Magness* was *dictum,* it has been assumed that the *dictum* is the law of this state. *See* O'Connell, *Ibid; City of Klamath Falls v.*

*Flitcraft, supra.* As we have pointed out, however, we did not in *City of Klamath Falls* follow the *Magness dictum* with respect to the destruction of the possibility of reverter by attempted alienation. Indeed, we held the interest was an interest (if not an estate) in land which descended to the heirs 'of the grantor.

Furthermore, it can hardly be said that one of the parties to the lawsuit relied on *Magness dictum* any more than the other. The plaintiff paid the Stephenses' heirs $1,000 for a deed to the two acres, and immediately brought this action to collect almost $35,000 in damages for defendant's cutting of trees and removal of aggregate from the property. The purchase price does not support the conclusion that plaintiff confidantly relied on the inalienability of the possibility of reverter. On the other hand, defendant obtained a quitclaim deed from the Railroad's successor, apparently on the theory that the Stephenses' alienation of the possibility of reverter might have destroyed it, leaving the Railroad as the owner in fee simple absolute. It seems apparent that the law is uncertain and should be clarified.

■ Therefore, we hold that the Stephenses were entitled to convey their possibility of reverter under the 1937 deed to defendant's predecessors. It follows that the heirs of Stephens conveyed nothing to plaintiff by their deed.

## IV

■ The question remains as to the proper disposition of the case. The trial court entered a decree on defendant's counterclaim quieting title to the disputed land in the defendant. However, as we stated at the outset, we treat the issue on appeal as whether the plaintiff in this trespass action owns the real property, as it alleges, and the defendant denies. Because we have concluded that the State is not the owner of the real property, the appropriate disposition is a judgment in favor of defendant. Accordingly, we remand for the entry of such a judgment.

Remanded with instructions to enter judgment for defendant.